THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LONZIE WALKER, Defendant-Appellant.

(No. 74-47; ▮▮▮▮▮▮▮▮▮▮

Second District (2nd Division)—November 26, 1975.

Ralph Ruebner, of State Appellate Defender's Office, of Elgin, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan (James W. Jerz, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant was indicted for the murder of his sister-in-law, Lillian Walker, and the attempt to murder his brother, George Walker. The jury returned a verdict of guilty of the attempted murder of George, but could not agree on a verdict as to the charge of murdering Lillian, and a mistrial was ordered on the murder count.

Prior to a date being set for a new trial on the murder charge defense counsel and the State's Attorney entered into plea negotiations, as a result of which the defendant appeared in court on the date set for hearing his post-trial motions and tendered a plea of guilty to the murder charge. The essence of the agreement was: (1) that the defendant would be sentenced to serve not less than 15 nor more than 30 years in the penitentiary for the murder of Lillian Walker and would receive the same sentence for the crime of attempt to murder George Walker, said sentence to run concurrently with the sentence for murder; (2) that the defendant would waive his right to file post-trial motions and would waive any errors he might otherwise raise as to his conviction for attempted murder.

The defendant now appeals his conviction, both as to the murder charge to which he pleaded guilty, and the attempted murder, of which he was convicted. As to the guilty plea on the charge of murder the defendant says the court did not admonish him in compliance with Supreme Court Rule 402 inasmuch as the court did not ascertain that there was a factual basis for the guilty plea before he accepted it. As to the attempted murder (of which he was convicted), the defendant raises three issues: (1) the trial court erred in allowing the State's Attorney to read verbatim portions of the trial transcript to the jury in his closing argument; (2) the trial court erred in failing to exercise his discretion as to his right to respond to certain questions asked of the court by the jury after it had retired to deliberate; (3) the trial court erred in refusing to give the defendant's proffered instruction on involuntary intoxication.

■■ The defendant's contention with regard to the failure of the court to ascertain that there was a factual basis for the guilty plea merits little attention. The defense attorney asked the court as far as the factual basis is concerned to consider the evidence adduced at the entire trial. The trial took three days and the testimony was voluminous. Every aspect of the crime was developed and argued over and the defendant himself testified as to the circumstances of the shooting. We agree with the trial court's finding inasmuch as the factual basis for murder was overwhelmingly established.

In considering the other assignments of error raised by the defendant we are met at the outset with the State's contention that none of them should be considered because the guilty plea waived all errors not jurisdictional which occurred at the trial. Moreover, the defendant agreed in open court that as part of the plea bargain he waived any errors arising out of the trial. The State points out that at the hearing on the plea of guilty the defendant specifically waived the filing of any posttrial motions, acknowledging in open court that the waiver was part of the plea bargain.

■■ As strong as the logic of this position may be and as eminently fair to the defendant in view of the evidence adduced at the trial and the advantage he received in the plea bargain, we are not inclined to dispose of this case on the basis that the defendant foreclosed himself from an appeal. While the rule invoked by the State as to waiver of errors by a guilty plea is clearly applicable to the murder charge to which the defendant pleaded guilty, it has no bearing on the charge of attempted murder and the only basis for the waiver of error as to that charge was the defendant's acknowledgment in open court that this was part of the plea bargain. While we do not say that a defendant

cannot, under any circumstances, effectively waive his right to appeal a criminal conviction, a coersive factor is alleged in this case through making such waiver part of the plea bargain involving another crime and we have therefore resolved to consider the issues raised here as to the errors occurring at the trial for attempt murder without consideration of the subsequent plea bargain.

It is contended by the defendant that reversible error was committed when the State's Attorney read verbatim to the jury a portion of the trial testimony at the closing argument. Although there is authority for this proposition (*People v. Willy*, 301 Ill. 307; *People. v. Hoggs*, 17 Ill. App.3d 67) such improper statements or evidence must be objected to at the time of the trial to be considered on appeal and no such timely objection was made in the case before us. Unless inflammatory or grossly exaggerated so as to deprive the defendant of a fair trial, relevant evidentiary material used in the closing argument and not objected to will be waived for the purposes of appeal. (See *People v. Simmons*, 21 Ill. App.3d 310, 313.) In this case the testimony objected to was in no way inflammatory or exaggerated. Commenting on the justice of this rule our Supreme Court said in *People v. Killebrew*, 55 Ill.2d 337:

> " * * * The rationale underlying the procedural waiver doctrine is a sound one, based upon the need for timely resolution at trial of evidentiary questions. The salutary consequence of the waiver rule is that "A party cannot sit by and permit evidence to be introduced without objection and upon appeal urge an objection which might have been obviated if made at the trial." (*People v. Trefonas*, 9 Ill.2d 92, 98.)' " 55 Ill.2d 337, 341.

On this point we hold, therefore, that the issue was waived by failure to make timely objection. Moreover, we are of the opinion that, considering the nature of the testimony, that is, that it was largely the defendant's own statements, a reading of the exact words rather than a summary or paraphrase of them did not materially affect the issue of guilt or innocence.

We turn now to the question raised by the failure of the trial judge to respond positively to several communications from the jury after it began its deliberations. The defendant contends that the judge's negative response to these communications evidenced a failure to exercise the discretion which in such cases resides with the trial court and which was confirmed by our Supreme Court in the case of *People v. Pierce*, 56 Ill. 2d 361. In that case, in commenting on the judge's negative response to an inquiry from the jury, the court said, after discussing various theories as to the trial court's discretion in replying to the jury:

> "A third view is that it is within the discretion of the trial court

to allow or refuse the request for the review of testimony. The majority of courts which have considered the question have adopted this view. (50 A.L.R.2d 176.) We consider that the position of the majority is to be preferred." (56 Ill.2d 361, 364.)

Following this case, in *People v. Queen*, 56 Ill.2d 560, 565, the Supreme Court held there had been a failure to exercise the trial court's proper discretion, when in answer to the jury's note reading, "'Would like the defendant's words on the stand,'" the judge replied, "'You must decide on the basis of the testimony heard in the courtroom. I cannot have any testimony of any witnesses read to you * * *.'" The Supreme Court held these words imported a mistaken belief by the trial court that it had no discretion in the matter and that its failure to answer, being based on this mistaken belief, was reversible error since the trial court had failed to exercise any discretion in a situation where he had room to do so.

We must decide, then, whether in the case before us the decision by the trial court not to respond positively to the jury's request was an abuse of discretion or a reasonable exercise of his judgment, considering all the circumstances.

■■ As to one note, inquiring as to whether the jury might have the "transcript by the police and State's Attorney," there is no question. The judge's reply of "No" was based on the agreement and discussion between the State's Attorney and defense counsel that this evidence would not go to the jury room.

Two other notes were sent to the judge by the jury. One read:

"We would like to know if the defendant stated if he cocked the gun just prior to firing the first time on the evening of Apr. 28, 1973."

The other read:

"Do we understand correctly by the instructions on the last page that we *could* return a verdict on one charge if we cannot arrive at a decision on the other."

To the first note the judge replied as follows:

"You have heard the evidence and must decide on what you heard. No questions may be answered by the court."

While this answer on its face might be considered as indicating a mistaken belief that the court had no discretion to reply, we do not so regard it in this particular case. The question implies that the defendant made some statement about cocking or not cocking the gun just prior to the shooting, but actually this was not so. The jury was apparently seeking an answer to the question as to whether the defendant had testified that he cocked the gun or that he had not cocked the

gun just before firing. However, a simple "Yes" or "No" answer to this question would have been misleading and possibly prejudicial to one side or the other. While the safety was not on and the defendant testified he had relied on a seventh bullet being in the chamber to act as a safety device, the seventh bullet was obviously not in the chamber, so the gun actually was "cocked" at the time of shooting. But, then the further question would arise as to whether the defendant was or was not aware of the lack of the seventh bullet. All of this would have required going far afield from the questions asked to give any kind of a positive answer and would have amounted to commenting on the evidence. To have supplied the jury with the verbatim testimony would have involved an editing judgment as to where to begin and where to stop and would have been far beyond the discretion of the trial court to determine on its own initiative. The answer given, in our opinion, was based on the trial court's best judgment under the circumstances. It did not indicate a mistaken belief that the court could not in a proper case give a fair answer to a proper question, if such answer could assist the jury. The question here involved ramifications the judge could not properly go into.

■■ The question asked by the jury as to the possibility of returning a verdict on one charge if they could not reach a decision on the other was answered:

> "The court refers the jury to the instructions heretofore given at the time the jury retired."

Again, this answer does not indicate a failure to exercise discretion. The transcript of the colloquy between the court and defense counsel and prosecuting attorney reflects not that the judge did not feel that he could reply, but rather a question as to the form of the reply. It was a complicated question since there were five verdict forms supplied to the jury and the situation was considered by the prosecutor to involve a possible question of double jeopardy. Defense counsel wanted the question answered "Yes"; the State wanted it answered "No." The judge faced with this situation and being entirely in the dark at the moment as to what verdict the jury had agreed upon and what it had not, after some discussion with counsel replied, referring the jury back to the original instructions. This comment, in our opinion, reflected an exercise of judgment rather than a failure to exercise discretion.

While we are of the opinion that the answer given by the judge as to the verdicts did not reflect a failure to exercise discretion, it did not, in any event, prejudice the defendant in any way. Since the defendant's counsel wanted the jury's query answered "Yes," and since the jury returned only one verdict, the defendant was not at all prejudiced by the judge's response.

■■ Finally, the defendant complains about the refusal of the trial court to give the proffered instruction on involuntary intoxication. Intoxication or drugged condition is a defense only if it negatives the existence of the mental state which is an element of the offense or if it is involuntarily produced and deprives the defendant of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. (Criminal Code, Ill. Rev. Stat. 1973, ch. 38, par. 6—3.) The difference between voluntary and involuntary intoxication, then, appears to be that if the intoxication is voluntary it must render the person incapable of acting knowingly and intentionally, whereas if it is involuntarily produced it need only render the person incapable of appreciating the criminality of his conduct and of conforming his conduct to the requirements of law. In the case before us the evidence makes it clear that the defendant was not so intoxicated as to be incapable of acting knowingly and intentionally. The shooting occurred within minutes of the defendant having assisted his nephew in playing a game of cards and while he was engaged, immediately afterwards, in a discussion of money with his brother. Moreover, when he left the house after the shooting he was capable of operating his car and of giving a coherent statement of the circumstances leading up to the shooting to the police. It is clear, therefore, that if the defense of intoxication was to be available to the defendant at all it had to be on the basis that such state was involuntarily produced. The only basis for the idea of involuntarily produced intoxication was the defendant's testimony that a week or so previous to the shooting he had obtained some pills from his brother to alleviate a stomach ache; that he had taken these pills with beneficial effect, and that on the evening in question he had taken two more of these pills from the jar where they were kept in his brother's house. Afterwards, he had drunk some beer and some wine. The tenuous basis for the involuntariness of his intoxication was that his brother did not tell him—and probably did not know—that the pills in question contained Seconal, a tranquilizing drug which, mixed with alcohol, could have the effect of intensifying the defendant's intoxication and reducing his control over his impulses. However, the testimony of defendant's medical witnesses was that the effect of the pills on the defendant would have been almost dissipated by 10 p.m.,[1] some four hours after they were allegedly taken. Also the arresting officers testified defendant was not seriously intoxicated immediately after his arrest.

While the only Illinois case relating to involuntary intoxication we

---

[1] The shooting occurred around 10 p.m.

have come across is the old case of *Bartholomew v. People,* 104 Ill. 601, that case accords with the concept of involuntary intoxication indicated in the statute previous to the present one. (Ill. Rev. Stat. 1959, ch. 38, § 599), which on involuntary drunkenness reads:

> "Drunkenness shall not be an excuse for any crime or misdemeanor, unless such drunkenness be occasioned by the fraud, contrivance or force of some other person, for the purpose of causing the perpetration of an offense; * * *."

In other words, involuntary drunkenness must be caused by trick, artifice or force. While the present statute refers only to "Intoxicated or Drugged Condition" which is "involuntarily produced" with reference to the means of inducing such involuntary intoxication, it is distinguished in the statute from voluntary intoxication and seemingly, therefore, must be accompanied by some outside influence operating on the will of the intoxicated defendant. Here there was no evidence whatever of such external influence. The defense merely testified that he took the pills in question upon the suggestion of his brother a week or so before the shooting occurred, without being aware that they contained Seconal, and that he took a couple more of the pills on the evening of the fatal incident, some four hours previous thereto. From his testimony it appears that no one else was present when he allegedly took the pills and there was not a trace of evidence as to fraud or force used to induce his taking them.

■■ Under these circumstances the judge refused to give an instruction on involuntary intoxication and we agree with his decision. Where there is no evidence raising an issue it is not error to refuse an instruction on such issue. *McKasson v. Zimmer Manufacturing Co.,* 12 Ill.App.3d 429; *Grant v. Joseph J. Duffy Co.,* 20 Ill.App.3d 669.

We find no error in the record before us and the judgment of the trial court is affirmed.

Judgment affirmed.

T. MORAN and DIXON, JJ., concur.