THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLARENCE BRUMFIELD, Defendant-Appellant.

Fifth District   No. 77-202

Opinion filed May 22, 1979.

Helen D. Moorman, Assistant Public Defender, of Edwardsville, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Raymond F. Buckley, Jr., and Bruce D. Irish, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant, Clarence Brumfield, appeals from a judgment of the circuit court of Madison County entered on a jury verdict finding him guilty of two counts of rape. He was sentenced to concurrent terms of 30 to 60 years imprisonment. While defendant has made numerous assignments of error, our disposition of this case makes it necessary to consider only those questions concerning the trial court's elimination of defendant's defense of involuntary intoxication and other matters which may arise on a subsequent retrial of this case.

Before proceeding to the principal question raised in this appeal, it is

necessary to review certain matters which may arise in a subsequent retrial of this case. On the fourth day of the trial, with the State having presented all of its evidence except the testimony of defendant's mother, defendant moved for mistrial on the basis of a violation of his sixth amendment right to a public trial. Defendant argued that his mother, who testified only as to his age, his brother-in-law and a friend had been excluded from the courtroom by the State through the use of groundless subpoenas. It was further pointed out that these individuals had not been included on the State's list of potential witnesses to be called in the trial. The State argued that the defendant was not denied a public trial because no members of the public had been excluded, that defendant's mother was in fact on defendant's list of witnesses to be called during the trial, and that defense counsel had retaliated by excluding a number of potential State witnesses from the court room by use of the same procedure employed by the State. At the time the court heard arguments on defendant's motion, both parties had released all witnesses in question from their subpoenas.

■■ These facts do not constitute the general indiscriminate exclusion of the public from the trial of a criminal case which is necessary for a defendant to be denied his constitutional right to a public trial. (*People v. Frisco* (1972), 4 Ill. App. 3d 1034, 283 N.E.2d 277.) However, we regard such tactics as misconduct by both the prosecution and the defense counsel and upon retrial such misuse of the subpoena power shall not be repeated.

A further matter relates to the State's violation of court ordered discovery. On December 17, 1976, the trial court granted defendant's discovery motion and ordered that all motions be answered in 10 days. Subsequently, defendant's motion for substitution of judge was granted, a hearing determining defendant's fitness to stand trial was heard, defendant's motion for continuance to complete a psychiatric examination to determine defendant's sanity at the time of the offense was denied, and that same psychiatric examination was performed on March 7, 1977. Jury selection began on the same day. During conference in chambers, conducted between periods of *voir dire*, defendant requested the State to provide relevant medical reports and the result of blood and hair tests. In addition, defendant objected to the list of 18 witnesses the State intended to call for trial which was tendered the following morning and which included names of people not listed in the police reports defendant had previously been supplied. Defendant requested that sanctions be imposed excluding the testimony of those witnesses not listed in the police reports but included on the State's list of witnesses to be called for trial. The State indicated to the court that additional witnesses not listed in the police reports included hospital personnel and

police officers from the crime laboratory who were previously known to defense counsel. Responding to the lengthy delay in answering discovery, the State commented that defendant was equally negligent by failing to request sanctions at an earlier time. Noting that it had not been informed as to when the State had actually obtained its discovery information, the court ordered the State to supply the defendant with the medical reports and blood and hair test results requested. It additionally indicated that defendant would have an opportunity to interview any surprise witnesses called by the State prior to their testimony. During trial, four witnesses not listed by the State on its list of witnesses submitted to the defendant on March 8, 1977, were allowed to testify for the State. Police reports having not been included in the record on appeal, it is unclear if defendant received notice that these witnesses would be called. Defendant now contends that he did not receive a fair trial when the State was allowed to call those witnesses not on the list first tendered to the defendant after the trial had begun.

The troublesome aspect of this issue is the apparent "bad faith" on the part of the State. The State supplied the list of 18 witnesses to the defendant on March 8, 1977, when *voir dire* was taking place, almost three months after the court had ordered it to comply with discovery. It is inconceivable that the State was still unaware that four witnesses not on the list would testify the following day. In addition, the State refused to furnish requested medical reports and hair and blood samples until after the trial had commenced.

■■ Although the trial prosecutor explained that she had only recent involvement in the proceedings, this does not excuse the State from its duty to make good faith efforts to comply with discovery orders. (Ill. Rev. Stat. 1975, ch. 110A, par. 412(d), (f), (g).) We trust that because of the present status of this case these errors will not recur upon retrial.

We now turn to the critical question in this appeal. During the second day of the trial proceedings and while *voir dire* examination was being conducted, the State filed a written motion *in limine* requesting the trial court to instruct the defendant to refrain from any mention during the trial of defendant's intoxicated state or drugged condition prior to the alleged offense without first obtaining permission from the court outside the presence of the jury. The State's premise was that defendant's intoxicated or drugged condition, whether voluntary or involuntary, was not a valid defense to rape. Therefore, any reference to the condition would prejudice the State's case by conveying a misconception of the law to the jury and serve to raise sympathy for the defendant even if the court were to sustain an objection and instruct the jury to disregard such material.

During the hearing on the motion, the defendant argued that

involuntary intoxication was a defense to rape and there would be evidence introduced at trial to support this defense. In the offer of proof made by defense counsel, it was asserted that defendant smoked marijuana on the night in question which, unbeknown to defendant, contained a strong intoxicating drug ("angel dust"). When he subsequently consumed alcohol voluntarily, the combined effects of these drugs led to defendant's involuntary acts. At the conclusion of argument, the trial court allowed the motion, noting that it was "the feeling of the court that either voluntary or involuntary use of drugs is not a defense of the crime of rape." Thus the trial court struck a defense before any evidence was heard.

Our Criminal Code of 1961 provides for the following affirmative defense of intoxicated or drugged condition:

> "A person who is in an intoxicated or drugged condition is criminally responsible for conduct unless such condition either:
>
> (a) Negatives the existence of a mental state which is an element of the offense; or
>
> (b) Is involuntarily produced and deprives him of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." Ill. Rev. Stat. 1977, ch. 38, par. 6—3.

Since rape is a crime of general intent (*People v. Hunter* (1973), 14 Ill. App. 3d 879, 303 N.E.2d 482), voluntary intoxication set out above in section 6—3(a) is clearly not a defense to such a charge. However, an involuntarily produced intoxicated or drugged condition which conforms to the requirements of section 6—3(b) relieves an individual of criminal responsibility for the commission of any crime. The trial court's order precluding any evidence of involuntary intoxication or drugged condition was accordingly in error.

Conceding in this appeal that involuntary intoxication is a defense to the charge of rape, the State now maintains that the trial court's order, though based on faulty reasoning, was actually correct. The State argues that the trial court properly excluded consideration of the defense of involuntary intoxication since the defendant's offer of proof was not sufficient to establish this defense. Citing *People v. Walker* (1975), 33 Ill. App. 3d 681, 338 N.E.2d 449, it is argued that involuntary intoxication must be accompanied by some outside influence operating on the will of the intoxicated defendant. In *Walker* the defendant testified that approximately one week prior to the shooting for which he was charged he obtained some pills from his brother to alleviate a stomachache. On the evening in question, defendant took two more of the pills from the jar where they were kept in his brother's house and later consumed some beer and wine. Defendant claimed that his subsequent conduct was

involuntary since his brother had not told him that the pills contained the tranquilizing drug Seconal which, mixed with alcohol, could have the effect of intensifying his intoxication and reducing his control over his impulses. The court noted from the defendant's testimony that no one was present when he took the pills and that there was no evidence that fraud or force had been used to induce him to take the pills. Addressing the question of whether the defendant's testimony supported the defense of involuntary intoxication, the court stated:

> "[I]nvoluntary drunkenness must be caused by trick, artifice or forced. While the present statute refers only to 'Intoxicated or Drugged Condition' which is 'involuntarily produced' with reference to the means of inducing such involuntary intoxication, it is distinguished in the statute from voluntary intoxication and seemingly, therefore, must be accompanied by some outside influence operating on the will of the intoxicated defendant." (33 Ill. App. 3d 681, 689.)

Ruling that the defendant's ignorance of the Seconal contained in the pills which he voluntarily took did not constitute evidence of involuntary intoxication, the court upheld the trial judge's refusal to instruct the jury on the defense of involuntary intoxication.

■ Both parties have provided forceful arguments for the application or inapplication of the *Walker* decision to this case. However, we believe these arguments only exemplify the fundamental error which has permeated this entire case. As noted previously, it was error for the trial court to preclude evidence of involuntary intoxication or drugged condition since such evidence may provide a defense to the crime of rape. While the defendant may have been obliged to respond to inquiries by the State with defenses he sought to establish, there was certainly no obligation on the part of the defendant to prove that he had sufficient evidence to establish that defense prior to trial. Once the defendant asserted a legally viable defense in response to the State's discovery motion, the State and the trial court were without authority to question the propriety of that defense prior to trial. Both parties and the trial court proceeded upon the faulty assumption that the defendant's offer of proof governed the efficacy of the defense of involuntary intoxication. However, the content of the offer of proof is irrelevant to the disposition of this issue. When the trial court judged and disallowed evidence of involuntary intoxication on the basis of this offer of proof, reversible error was committed.

While we believe for the above reasons that the holding in *Walker* has no application to this case, we note that in that case the defendant was allowed to introduce evidence of intoxication to the jury. In this case the trial court precluded the opportunity to establish the defense. The motion

*in limine* filed by the State in this case was in substance a motion to strike an entire defense. Granting such a motion and thereby preventing the defendant from presenting evidence on an available defense not only distorts the traditional application of motions *in limine*, but likewise raises serious constitutional questions relating to an accused's right to present a defense. U.S. Const., amends. VI and XIV; Ill. Const. 1970, art. I, §2.

■■ ■ A motion *in limine* should be used with caution, particularly in criminal cases. When used in the manner of its application in this case, it has the potential to deprive a criminal defendant of his day in court. That a defendant may have a tenuous defense is an insufficient justification for prohibiting him from trying to establish that defense. Nor should a party ordinarily be required to try a case or defense twice—once outside the jury's presence to satisfy the trial court of its sufficiency and then again before the jury. Whether the defendant will be able to substantiate his defense sufficiently to generate a jury question cannot be known until the evidence is in, but a defendant has the right to present his defense at trial. The trial court's order granting the State's motion *in limine* before the admission of any evidence deprived the defendant of his fundamental right to defend himself in a criminal trial. Summary judgments are allowed on rare occasions in civil cases, but never in criminal cases.

For the foregoing reasons the judgment of the circuit court of Madison County is reversed, and this cause is remanded for a new trial.

Reversed and remanded with directions.

KARNS and KASSERMAN, JJ., concur.