THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MICHAEL J. GERRIOR, Defendant-Appellant.

Second District    No. 2—86—0108

Opinion filed May 22, 1987.

Marc R. Kadish, of Chicago, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Michael Gerrior, was charged by indictment with committing the offenses of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a)), unlawful restraint (Ill. Rev. Stat. 1985, ch. 38, par. 10—3(a)), and armed violence (Ill. Rev. Stat. 1985, ch. 38, par. 33A—2). The case proceeded to a jury trial on the armed robbery charge only, and defendant was found guilty of the lesser-included offense of robbery. The jury was unable to decide on a verdict on the armed robbery charge. Defendant was subsequently sentenced on the robbery conviction to a 7-year term of imprisonment.

Defendant raises three issues on appeal: (1) whether the trial court erred in refusing his tendered instruction on the defense of involuntary intoxication; (2) whether the trial court erred in giving the

State's instruction No. 8, Illinois Pattern Jury Instructions, Criminal, No. 3.06—3.07 (2d ed. 1981), on statements by a defendant; and (3) whether defendant was deprived of the effective assistance of counsel.

At trial, defendant was identified by several witnesses as the person who robbed an employee working at a checkout register at the Hostess Thrift Store in Downers Grove, Illinois, on March 29, 1985. He pointed a gun at the employee, and, when he left, a knife was seen in his back pocket. Immediately after the robbery, at about 11 a.m., defendant went into a tailor shop down the street from the Hostess Thrift Store and purchased a jacket. Defendant then left in a taxicab. He was seen getting into the cab by police, who arrived in response to the robbery nearby, and was subsequently arrested. A plastic gun and a butter knife were found by police about 150 feet west of the thrift store, and a pile of wadded money totalling $97 was recovered from the front pants pocket of the defendant. Several witnesses testified that they smelled the odor of alcohol on defendant's breath, and the taxicab driver and one policeman believed defendant appeared to be intoxicated.

Defendant testified that he was an alcoholic at the time of this incident and that he was taking Antabuse, a drug that will cause a violent physical reaction if taken when he has consumed alcohol. He also was taking medication for pain relating to a work-related injury. He was staying at the Downers Grove Motel on March 29, 1985. He believed that he took Antabuse one or two nights before the incident and, on the morning of March 29, took medication for pain. He then purchased two pints of vodka, which he consumed that morning. He left the motel and recalled walking around town, but he did not remember anything else until waking up in the county jail.

Defendant's physician, Dr. Joseph L. Giacchino, testified that he has been treating defendant since 1984 for a work-related injury. Defendant was taking Antabuse at that time for his alcoholism problem, and Giacchino prescribed pain medication for the injuries and continued the Antabuse for defendant's alcohol problem. A patient on Antabuse who consumes alcohol will have a violent reaction causing confusion, nausea, vomiting, and diarrhea. One of the medications he prescribed for defendant, Serax, will also cause a severe reaction when taken with Antabuse and alcohol. He had written prescriptions in 1984 and 1985 for defendant to take Serax, Tranxene, and Fiorinal with codeine. He was of the opinion that a person taking Antabuse and one or more of the pain medications together with the consumption of alcohol will have an extreme reaction which would cause him to do bizarre things he would not normally do and he would not re-

member. He believed defendant was having such a reaction at the time of the incident. He had told defendant of the adverse reaction which would be caused by the effects of the medications and Antabuse if taken with alcohol.

In rebuttal, the State produced testimony that the Downers Grove Motel was located next to the Hostess Thrift Store and that no liquor bottles or medicines were found in defendant's motel room when searched later in the day on March 29. Further, there was testimony that when questioned following his arrest, defendant denied committing the robbery, being in the thrift store, and owning or possessing a gun.

Defendant's first contention is that the trial court erred when it refused his tendered instruction on the defense of involuntary intoxication. He maintains that there was evidence in the record that he consumed alcohol while using Antabuse and legally prescribed painkillers which caused a psychotic reaction, making him intoxicated unintentionally and involuntarily. He further argues that, under the circumstances present here, he did not become voluntarily intoxicated and that the involuntary intoxication defense should apply to him as one who became accidentally intoxicated after taking legally prescribed medication for alleviation of pain. In essence, defendant states that the defense of involuntary intoxication, which is available if the intoxication is caused by some outside influence of some other person, should be available here to a patient who is forced by the outside influence of pain into taking legally prescribed medicine.

The affirmative defense of involuntary intoxication is provided for by statute in section 6—3 of the Criminal Code of 1961 and, in pertinent part applicable hereto, provides:

> "A person who is in an intoxicated or drugged condition is criminally responsible for conduct unless such condition either:
> 
> * * *
>
> (b) Is involuntarily produced and deprives him of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." Ill. Rev. Stat. 1985, ch. 38, par. 6—3(b).

In *People v. Walker* (1975), 33 Ill. App. 3d 681, 338 N.E.2d 449, the court held that for intoxication to be "involuntarily produced" within the meaning of the statute, it must be accompanied by some outside influence operating on the will of the intoxicated defendant which forced, tricked, or fraudulently induced intoxication. (33 Ill. App. 3d 681, 687-88, 338 N.E.2d 449.) In *Walker*, the defendant testified he received pills containing Seconal to alleviate a stomachache

and took some of the pills and drank some beer and wine just prior to the incident which intensified his intoxication and reduced his control over his impulses. The court found that there was no evidence under the facts of external influence and that the trial judge properly refused to give an instruction on involuntary intoxication. 33 Ill. App. 3d 681, 688, 338 N.E.2d 449.

■■ In the recent case of *People v. Larry* (1986), 144 Ill. App. 3d 669, 494 N.E.2d 1212, this court followed the *Walker* decision and further stated that the phrase "involuntarily produced" in the statute "refers to the mechanical act of ingesting the intoxicant, rather than to a willing and intelligent assumption of the possible harmful consequences of ingesting the intoxicant." (144 Ill. App. 3d 669, 677, 494 N.E.2d 1212.) Ignorance can be a source of involuntariness only if it is a result of trickery, fraud, or deceit. (144 Ill. App. 3d 669, 678, 494 N.E.2d 1212.) In *Larry*, the defendant smoked marijuana which he saw another person put powder on, later contended to be Phencyclidene, and became dizzy and under a drugged condition.

■ We agree with the rationale of these cases. While defendant attempts to distinguish *Larry* on its facts because the intoxicant here was alleged to have been caused by the "outside influence" of pain for which he took legally prescribed drugs while the intoxication in *Larry* was caused by the use of an illegal substance obtained by the defendant, we find no merit to this contention. The appropriate inquiry in both *Larry* and *Walker* is whether the intoxication was "involuntarily produced" by an outside influence operating on the will of the intoxicated defendant which forced, tricked, or fraudulently induced intoxication. The fact here that medicines for pain were legally prescribed obviously does not constitute an "outside influence" by some person of the nature contemplated in the *Walker* and *Larry* decisions. Defendant knew the nature of the medicines and Antabuse he was taking and was told by his physician of a potential extreme reaction when taken with alcohol. No force, trickery, or deceit by an outside influence is present. Under the facts, the trial court properly refused an instruction on involuntary intoxication.

■■ ■ The next contention we address is whether the trial court erred in giving the State's instruction No. 8, Illinois Pattern Jury Instructions, Criminal, No. 3.06—3.07 (2d ed. 1981) (hereinafter IPI Criminal 2d), relating to statements by the defendant. Defendant maintains that the only statement made by him that was testified to at trial was a statement he made at the tailor shop that he had done a "bad thing." This statement was stricken because it had not been disclosed to the defendant, and the jury was advised to disregard the

statement.

The State responds first that this issue was not included in defendant's post-trial motion and is waived. Even though an objection is made at trial, the failure to reassert the issue in a post-trial motion for a new trial waives the issue for review. (*People v. Wright* (1985), 111 Ill. 2d 128, 153-54, 490 N.E.2d 640; *People v. Friesland* (1985), 109 Ill. 2d 369, 374-75, 488 N.E.2d 261; see *People v. Berry* (1984), 99 Ill. 2d 499, 503, 460 N.E.2d 742.) Supreme Court Rule 451(c), however, sets forth a limited exception to the waiver rule which allows the review of "substantial defects" in instructions "if the interests of justice require." (87 Ill. 2d R. 451(c); *People v. Berry* (1984), 99 Ill. 2d 499, 503-04, 460 N.E.2d 742.) Recognizing the very limited use of the Rule 451(c) exception to the waiver rule, the supreme court has restricted the exception to the correction of "grave errors" or to situations where the case is close factually and fundamental fairness requires that the jury be properly instructed. *People v. Huckstead* (1982), 91 Ill. 2d 536, 544, 440 N.E.2d 1248.

■ The former IPI criminal instruction relating only to a confession by a defendant (IPI Criminal No. 3.07) was revised in the second edition of IPI Criminal (1981) to now refer to a statement by a defendant. (IPI Criminal 2d No. 3.06—3.07.) This revision broadly includes within the definition of a statement an admission, confession, or false exculpatory statement and avoids the judge's having to characterize the statement when he instructs the jury. (IPI Criminal 2d No. 3.06—3.07, Committee Note, at 20; *People v. Floyd* (1984), 103 Ill. 2d 541, 548-49, 470 N.E.2d 293; *People v. Parker* (1983), 113 Ill. App. 3d 321, 329, 447 N.E.2d 457.) Here, we agree with the State that there was evidence that defendant gave a statement to police denying that he committed the robbery, was in the thrift store, and owned or possessed a gun. This exculpatory statement not only related to the offense but also was relevant as an admission that he recalled some of the occurrences, contrary to his trial testimony that he did not remember anything the morning of the occurrence after he consumed vodka and began walking around town. We reject defendant's argument that the jury might have considered, within the context of this instruction, the stricken testimony of defendant's admission that he had done a "bad thing." Where a timely objection is made at trial, the court can, by sustaining the objection and instructing the jury to disregard improper testimony or remarks, as was done here, usually correct the error. (See *People v. Carlson* (1980), 79 Ill. 2d 564, 577, 404 N.E.2d 233.) No error was committed in the giving of this instruction.

■ Defendant's final contention is that he was deprived of the ef-

fective assistance of counsel. Essentially, defendant now argues that his trial counsel did not present a coherent, legally recognized theory of defense at trial by pursuing insanity and voluntary intoxication defenses instead of the involuntary intoxication defense, which was asserted only as an "afterthought." Defendant further maintains that during his final argument, counsel abandoned any reasonable doubt argument and effectively conceded the State's case.

The performance of defendant's trial counsel is tested by the standards adopted by the United States Supreme Court in *Strickland v. Washington* (1984), 446 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, where defendant must show (1) that his counsel's performance was outside the range of competency demanded of attorneys in criminal cases, and (2) that the deficient performance prejudiced his defense. (*People v. Guest* (1986), 115 Ill. 2d 72, 88-89, 503 N.E.2d 255; *People v. Barnard* (1984), 104 Ill. 2d 218, 237, 470 N.E.2d 1005.) On this record, defendant has failed to show his trial counsel's incompetency.

▮ Under the facts, the defense of insanity due to intoxication was unavailable as there was no evidence that there was any mental disease caused by chronic use of drugs or alcohol resulting in a permanent type of insanity. (See *People v. Free* (1983), 94 Ill. 2d 378, 407-08, 447 N.E.2d 218.) The defense of voluntary intoxication under section 6—3(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 6—3(a)) was also unavailable as the offense of armed robbery does not require a specific intent. (See *People v. Banks* (1979), 75 Ill. 2d 383, 388 N.E.2d 1244.) While it appears that these defenses were contemplated by defendant's trial counsel, it is apparent that, as the trial developed, only an argument for an involuntary intoxication defense might have a reasonable possibility of success. This was rejected, however, both by the trial court, which refused to instruct the jury on that defense, and ultimately by this court herein. While defendant now is critical of trial counsel's failure to more strenuously advocate this defense, we have concluded that this defense was not available under the facts and no prejudice can be shown by any arguable failure on trial counsel's part to more actively present this defense. This defense was not viable under the particular facts of the case and could not have been developed by trial counsel as a successful defense. See *People v. Weir* (1986), 111 Ill. 2d 334, 339-40, 490 N.E.2d 1.

Defendant is also critical of trial counsel's closing argument, which present counsel characterizes as abandoning the reasonable doubt argument and effectively conceding the State's case. (See *Peo-*

*ple v. Hattery* (1985), 109 Ill. 2d 449, 488 N.E.2d 513.) Counsel made the following statement during his final argument:

"Did anybody hear from that witness stand that that knife was in any way whatsoever used in this case?

But now this is suddenly the key item in the State's whole case of armed robbery against the defendant. That is one of the reasons that we have juries and juries use their everyday experiences in life. Nobody was threatened with that knife.

As a matter of fact, if you consider all of the circumstances, nobody was really threatened. What did the witnesses say occurred when this man—and I am not going to try to pull wool over your eyes and say it wasn't Mr. Gerrior. I don't personally know if it was or wasn't—but the evidence seems to imply that it was him—seems to imply. I don't know that it is as clear and convincing as some people may want, but it seems to imply that, but what did—what did the witnesses say?"

It is evident that trial counsel clearly did not concede defendant's guilt, but tactically was not going to argue to the jury that defendant was not the person present at the store so as to discredit the thrust of a part of his defense, that defendant did not possess a weapon and could not be guilty of armed robbery. This line of argument was apparently successful and to defendant's benefit as the jury could not reach a verdict on the armed robbery charge, which was ultimately not retried by the State, and defendant was found guilty only of the lesser-included offense of robbery. Rather than prejudice defendant, this line of argument appears to have helped him avoid being convicted of a more serious charge. From a review of the record, defendant had little chance of a not guilty verdict for the robbery, as two eyewitnesses identified him in court and he was seen and apprehended shortly after the robbery near the scene with a wad of money approximating the amount taken and wearing certain clothes described by the witnesses. The record discloses that trial counsel carefully cross-examined the witnesses as to their identification and recollection and was unable to discredit their positive identification of defendant. Defendant, under these circumstances, was not denied the effective assistance of counsel.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

UNVERZAGT and NASH, JJ., concur.