# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. McMillen*, 2011 IL App (1st) 100366

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GREGORY McMILLEN, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-10-0366 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | September 30, 3011<br><br>November 4, 2011<br>November 17, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly dismissed defendant's *pro se* postconviction petition alleging that he was denied his right to present evidence that the involuntary intoxication defense applied because he was suffering from the unknown adverse effects of prescription medication and cocaine, since Illinois law does not allow the involuntary intoxication defense where an individual voluntarily ingested an illegal drug. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 92-CR-16121; the Hon. James B. Linn, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Michael J. Pelletier, Alan D. Goldberg, and Karl H. Mundt, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needham, and Stacia D. Weber, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE STERBA delivered the judgment of the court, with opinion.

Presiding Justice Lavin and Justice Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1    On November 20, 1994, defendant Gregory McMillen was convicted of first degree murder of Vivian Bramlett and sentenced to a 40-year prison term. On direct appeal, this court affirmed his conviction. *People v. McMillen*, No. 1-94-4414 (1996) (unpublished order under Supreme Court Rule 23). On December 28, 2009, defendant filed a *pro se* postconviction petition (petition). The trial court dismissed defendant's petition on January 12, 2010, finding the issues raised were "wholly without merit." Defendant appeals the trial court's dismissal of his petition. On appeal, defendant claims that he was denied his constitutional right to present a complete defense because at the time of the offense, he was suffering from the unknown adverse effects of prescription medication and cocaine. Thus, defendant claims that the involuntary intoxication defense applies to his case and he should be granted a new trial where he can raise that defense. For the reasons that follow, we affirm the trial court's judgment.

¶ 2                                    Background

¶ 3    On June 15, 1986, defendant murdered Vivian Bramlett. Six years later, on June 26, 1992, defendant made a statement to Detectives Michael Kill and James Dwyer confessing to the murder. In the statement, defendant told police that on the day of the murder, he and Vivian had gone through more than an "eight ball" of cocaine together. While smoking the cocaine, he noticed Vivian placed eight bags of the drug in her shoe. Defendant believed Vivian and another man were going to smoke the cocaine together and then have sex. At around 10:30 p.m., defendant drove Vivian to the railroad tracks by 77th and Woodlawn, an area he referred to as their "hiding place." He then confronted Vivian about the cocaine she took and an argument ensued. After discovering cocaine in Vivian's shoe, defendant hit her nine times. He stated he hit Vivian hard every time. After hitting her, defendant ran away thinking she was unconscious, but he returned a short time later. Upon his return, Vivian had

-2-

regained consciousness, but before she could get to her feet, defendant threw a heavy rock at her, causing her death. Shortly after his confession, the State charged defendant with two counts of first degree murder.

¶ 4 Prior to his trial, defendant submitted to multiple psychological exams at the Psychiatric Institute to determine his fitness to stand trial. Dr. John P. Murray sent a memorandum to the trial judge stating that defendant was fit to stand trial. Additionally, Dr. Marcos, Dr. Kaplan, and Dr. Reefman all issued reports stating that defendant was fit to stand trial. The trial court also conducted two hearings to determine defendant's fitness. At both hearings, the defendant was found to be fit for trial.

¶ 5 At trial, Dr. Stone testified as an expert witness on defendant's behalf. Dr. Stone testified that defendant was suffering from a combination of paranoid schizophrenia, borderline personality disorder and cocaine dependence. He also stated that at the time of the murder, he did not believe defendant could control his behavior. Dr. Stone testified that defendant had been prescribed the following medication: (1) Thorazine, an antipsychotic and a tranquilizer, prescribed on and off since defendant was 14 years old; (2) Haldol, an antipsychotic with a tranquilizing effect, prescribed in 1983; (3) Dilantin prescribed in approximately 1986; and (4) Sinequan, which is among the most sedating of antidepressants, prescribed at various times. Dr. Stone also testified that he had no ability to know if defendant was on these drugs at the time of the murder, but he believed that defendant's behavior that day was triggered by a "drug initiated paranoia" caused by cocaine use.

¶ 6 The State presented Dr. Albert Stipes as an expert witness. Dr. Stipes testified that he did not believe defendant was a paranoid schizophrenic, but that defendant suffered from a disorder known as malingering, which caused him to feign symptoms of schizophrenia. Dr. Stipes also testified that defendant suffered from antisocial personality disorder, which is characterized by a lack of empathy for others, poor impulse control, and habitual criminal behavior. After multiple examinations, Dr. Stipes concluded that defendant was sane at the time of the murder in June of 1986.

¶ 7 After the State rested, defendant took the stand and testified that he knew Vivian, but was unsure whether he killed her. Defendant also testified that he told the police that he needed help. During redirect examination, defendant testified that he was currently taking medication, including Thorazine, Sinequan, and Dilantin, and that at the time of the murder he had smoked cocaine. Defendant made no mention about whether he was taking medication at the time of the murder.

¶ 8 Assistant State's Attorney Mike Rogers testified during rebuttal that defendant did not say he wanted help for his problems at the time of his initial statement. Furthermore, he noted that defendant made no emotional outbursts during the initial statement.

¶ 9 On November 20, 1994, at the conclusion of his bench trial, defendant was found guilty of first degree murder. Defendant appealed his conviction. On appeal, this court rejected defendant's claim of insanity, noting the offense was committed in a manner calculated to avoid detection and that defendant himself brought the crime to the attention of the

authorities. This court affirmed the trial court's judgment.

¶ 10    On December 28, 2009, defendant filed a *pro se* postconviction petition. In his petition, defendant alleged that at the time of the murder, he experienced unwarned and unexpected adverse side effects of prescription medication and cocaine. Defendant argued that he should be allowed to retroactively raise the involuntary intoxication defense. The trial court dismissed his claim at the first stage of the postconviction proceedings, finding his claims were "wholly without merit." Defendant timely filed this appeal.

¶ 11                                    Analysis

¶ 12    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2004)) provides a procedural mechanism by which any person imprisoned in the penitentiary may assert that there was a substantial denial of a federal or state constitutional right in the proceeding that resulted in his or her conviction. 725 ILCS 5/122-1(a) (West 2004); *People v. Harris*, 224 Ill. 2d 115, 124 (2007). A postconviction proceeding is limited to "constitutional matters that have not been, nor could they have been, previously adjudicated." *Harris*, 224 Ill. 2d at 124.

¶ 13    Postconviction proceedings may consist of up to three stages in noncapital penalty cases. *People v. Pendleton*, 223 Ill. 2d 458, 471-72 (2006). The instant case involves a first-stage summary dismissal of a postconviction petition. At the first stage, a petition cannot be dismissed unless it is frivolous and patently without merit. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009). A petition will be deemed frivolous and patently without merit when the allegations in the petition, taken as true and liberally construed, have no basis either in law or in fact. *Id*. This court reviews the trial court's ruling of a first-stage postconviction petition, adopting a *de novo* standard of review. *Id.* at 9.

¶ 14    The statute at issue is this appeal states in relevant part:

"§ 6-3. Intoxicated or drugged condition. A person who is in an intoxicated or drugged condition is criminally responsible for conduct unless such condition either:

***

(b) Is involuntarily produced and deprives him of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." 720 ILCS 5/6-3 (West 1994).

¶ 15    Defendant's petition alleges that his constitutionally protected rights were violated because he was not able to present evidence supporting an involuntary intoxication defense at trial. At the time of defendant's trial in 1994, the involuntary intoxication defense was only available if an individual's intoxication was the result of some external influence, such as trick, artifice, or force. *People v. Rogers*, 123 Ill. 2d 487, 508 (1988). Thus, defendant could not raise the involuntary intoxication defense at the time of his trial because he made no allegations that external influences gave rise to his alleged involuntary intoxication. In 2006, the Illinois Supreme Court in *People v. Hari*, 218 Ill. 2d 275, 292 (2006), expanded the scope

of the defense by holding that involuntary intoxication also applies to individuals suffering from unexpected and unwarned adverse side effects of prescription medication.

¶ 16 Defendant claims that the Illinois Supreme Court's ruling in *Hari* created a new substantive rule that should apply retroactively on collateral appeal. Defendant maintains that he should be granted a new trial in order to raise the affirmative defense of involuntary intoxication due to unwarned and unexpected adverse side effects of his prescription medication and cocaine use.

¶ 17 The State responds that the *Hari* decision announced a procedural rule, which should not be applied retroactively. The State contends defendant's claims of involuntary intoxication at the time of the murder are completely rebutted by the record because the defendant was voluntarily ingesting cocaine at the time of the offense.

¶ 18 Our task on appeal is to determine whether defendant's petition raises a sufficient claim of a substantial denial of a constitutional right that resulted in his conviction. To make that determination, we will consider whether defendant's legal and factual claims are indisputably meritless, and we will do so without regard to the temporal reach of *Hari*. Since defendant raises a claim that he did not have a meaningful opportunity to present a complete defense, this court deems it necessary to only consider his constitutional claim to determine whether his petition should proceed to the second stage of postconviction proceedings. As such, we now turn to consider defendant's claim raised in his petition.

¶ 19 The Act provides that the allegations raised in a postconviction petition must be liberally construed and taken as true. *Hodges*, 234 Ill. 2d at 10. Defendant alleges in his petition and brief that at the time of the offense, he was involuntarily intoxicated as the result of ingesting the prescription medications Thorazine, Haldol, Dilantin, and Sinequan, along with the illegal substance crack cocaine. Taking these facts as true, at the time of the offense, defendant had ingested some mixture of psychotropic prescription medication, along with an illegal substance.

¶ 20 The "intoxicated or drugged condition" statute states:

"A person who is in an intoxicated or drugged condition is criminally responsible for conduct unless such condition is *involuntarily* produced and deprives him of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." (Emphasis added.) 720 ILCS 5/6-3 (West 2004).

The statute's express language and purposeful use of the term "involuntarily" indicates that an individual who is in a *voluntary* "drugged condition" may not invoke the involuntary intoxication defense.

¶ 21 Involuntary actions are commonly defined as actions " 'springing from accident or impulse rather than conscious exercise of the will' " and " '[n]ot resulting from a free and unrestrained choice; not subject to control by the will.' " *Hari*, 218 Ill. 2d at 292 (quoting Webster's Third New International Dictionary 1191 (1993), and Black's Law Dictionary 833 (7th ed. 1999)). Here, defendant testified that he smoked crack cocaine on the day of the

offense. Defendant did not testify that his ingestion of cocaine was the result of something other than his conscious choice or free will. Therefore, his ingestion of cocaine cannot be classified as "involuntary" under the plain meaning of the term.

¶ 22    Illinois case law supports a conclusion that the knowing, or voluntary, ingestion of cocaine or other illegal drugs precludes the use of the involuntary intoxication defense. In *People v. Rogers*, 123 Ill. 2d 487, 508 (1988), the Illinois Supreme Court held that a defendant who had multiple drug addictions and ingested drugs acted voluntarily. In *People v. Downey*, 162 Ill. App. 3d 322, 335 (1987), this court held that defendant's admitted cocaine addiction did not render his actions involuntary. This court in *People v. Gerrior*, 155 Ill. App. 3d 949, 953 (1987), held that the defendant who knew about the nature of prescribed medication he was taking, and was told of the potential extreme reaction when taken with alcohol, was voluntarily intoxicated. The *People v. Larry*, 144 Ill. App. 3d 669, 677 (1986), court held that the defendant who smoked marijuana after witnessing another person put white powder on it was voluntarily intoxicated. This court in *People v. Walker*, 33 Ill. App. 3d 681, 687-88 (1975), held that the defendant who received pills containing Seconal, a tranquillizing drug, from his brother and who consumed alcohol while taking the pills acted voluntarily.

¶ 23    Defendant's ingestion of prescription medication does not render his case distinguishable from the cases cited above because in all of those cases, the use of illegal drugs or consumption of alcohol was involved, as it was here. Defendant's case, however, is distinguishable from *Hari* because the defendant there did not voluntarily ingest any illegal substance. *Hari*, 218 Ill. 2d at 293. The Illinois Supreme Court's narrow holding in *Hari* allowed the defendant to raise the involuntary intoxication defense because he presented some evidence at trial that he suffered from unwarned and unknown adverse side effects caused by a combination of prescribed medication and an over-the-counter medication. *Id.* at 280, 293. Thus, the *Hari* holding does not support the proposition that mixing prescription medication with illegal drugs gives rise to the involuntary intoxication defense.

¶ 24    Defendant relies on the Fourth District's holding in *People v. Alberts,* 383 Ill. App. 3d 374 (2008), to support his position that the involuntary intoxication defense applies to his case. While *Alberts* is not binding on this court, we may consider its holding as persuasive authority. *People ex rel. Birkett v. City of Chicago*, 292 Ill. App. 3d 745, 753 (1997). Similar to *Hari*, the defendant in *Alberts* claimed he was suffering from the unwarned and unknown adverse side effects of prescription medication. *Alberts,* 383 Ill. App. 3d at 380. There is no indication in *Alberts* that the defendant consumed any illegal drugs at the time of his offense, but the defendant did consume some quantity of prescribed psychotropic medication. *Id.* at 384. Thus, because *Alberts* does not involve the consumption of illegal drugs, it is also clearly distinguishable from the case at bar.

¶ 25    Defendant raises two reasons why his voluntary use of illegal drugs does not automatically foreclose the involuntary intoxication defense. First, defendant claims that *Hari* overruled the *Rogers*, *Downey*, *Gerrior*, *Walker* and *Larry* cases and, consequently, the involuntary intoxication defense may be raised in cases where the defendant voluntarily

ingests illegal drugs. We, however, do not consider this argument persuasive. The *Hari* decision held, "To the extent that *Rogers*, *Downey*, *Gerrior*, *Walker* and *Larry* can be read as excluding the unexpected and unwarned adverse side effects from medication taken on doctor's orders from the plain meaning of 'involuntarily produced,' they are overruled." *Hari*, 218 Ill. 2d at 294. Thus, those cases were overruled on narrow grounds based only on the definition of "involuntarily produced" as it relates to "prescription medication." *Id.* The Illinois Supreme Court noted that those cases relied on the involuntary intoxication standard set forth in a predecessor statute that allowed the defense only where intoxication was induced by some trick, artifice, or force. *Id.* The supreme court's limited overruling of those cases clarified that involuntariness is not limited to situations where a trick, artifice, or force was involved and that the unexpected and unwarned adverse effects from medication taken on doctor's orders may be included in the definition of "involuntarily produced." *Id.* Thus, the supreme court in *Hari* did not overrule *Rogers*, *Downey*, *Gerrior*, *Walker*, and *Larry* with respect to their holdings that a defendant who knowingly ingests an illegal substance cannot raise the involuntary intoxication defense.

¶ 26    Second, defendant claims that the Fifth District's decision in *People v. Brumfield,* 72 Ill. App. 3d 107 (1979), demonstrates that the involuntary intoxication defense is not automatically barred where illegal drugs are voluntarily ingested. We disagree. In *Brumfield*, the defendant argued he should be allowed to present evidence at trial that he was involuntarily intoxicated at the time of his offense due to his voluntary ingestion of marijuana, which unbeknownst to him, was laced with "angel dust." *Id.* at 111. Subsequently, the defendant consumed alcohol and claimed that the combined effects of these drugs led to his involuntary acts. *Id.* The trial court, refusing to allow the defendant to present this evidence at trial, granted the State's motion *in limine*. *Id.* The appellate court reversed and held that "the trial court's order granting the State's motion *in limine* before the admission of any evidence deprived the defendant of his fundamental right to defend himself in a criminal trial." *Id. at* 113. The *Brumfield* court noted that the parties and the trial court proceeded upon the faulty assumption that the defendant's initial offer of proof governed the efficacy of the involuntary intoxication defense. *Id.* at 112. The court did not hold, however, that the defense would ultimately be available at trial, only that the defense could not be barred based on the defendant's initial offer of proof before any evidence had been presented. *Id.* at 112. As a result, the *Brumfield* holding involves a different issue than that presented in the instant case.

¶ 27    Moreover, the facts underlying the legal theory in *Hari* are distinguishable from the case at bar. The defendant in *Hari* presented specific evidence demonstrating that he was suffering from unwarned *and* unknown side effects resulting from the mixture of prescription medication and over-the-counter medicine. *Hari*, 218 Ill. 2d at 295. The defendant's doctor in *Hari* never warned him of the possible adverse side effects of mixing his prescription Zoloft with the over-the-counter medication Tylenol PM. *Id.* at 288. Also, in *Hari*, the defendant had only been taking his medication for six days at the time of his offense. *Id.* at 283.

¶ 28    Here, we must take as true at this initial stage defendant's claim that he was not warned

by a physician of the adverse side effects that may result from taking four prescription medications and ingesting an "eight ball" of cocaine. Any potential adverse effects that resulted, however, may not be considered *unknown* and, in fact, are so obvious that a warning need not be made by a physician. Excessive cocaine use alone is commonly known to produce adverse side effects. Thus, it is common knowledge that adverse side effects may result when cocaine is used along with four other prescription medications. Additionally, defendant claims that he was on some combination of prescription medication for at least six months. This prolonged use and exposure to the prescription medication also raise doubt concerning his claim that any adverse side effects of the prescription medication were unknown.

¶ 29    In sum, defendant's petition lacks an arguable basis in law or fact because it is based on an indisputably meritless legal theory. Illinois law does not allow the involuntary intoxication defense where an individual voluntarily ingested an illegal drug. Defendant's petition fails to demonstrate a constitutional infirmity that would necessitate relief under the Act. Accordingly, we affirm the trial court's judgment that defendant's claims are patently without merit.

¶ 30    Affirmed.