Filed 6/26/08          NO. 4-07-0582

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,      )      Appeal from
                    Plaintiff-Appellee,      )      Circuit Court of
                    v.                        )      Logan County
PERRY ALBERTS,                               )      No. 00CF221
                    Defendant-Appellant.      )
                                             )      Honorable
                                             )      David L. Coogan,
                                             )      Judge Presiding.

_____

PRESIDING JUSTICE APPLETON delivered the opinion of the court:

In March 2002, a jury convicted defendant, Perry Alberts, of 11 counts of

aggravated criminal sexual assault. In May 2002, the trial court sentenced him to 111

years in prison. On direct appeal, this court affirmed the majority of defendant's

convictions and sentences, reversing one and vacating the corresponding sentence on

the basis of the one-act, one-crime rule. People v. Alberts, No. 4-02-0506 (December 2,

2004) (unpublished decision under Supreme Court Rule 23).

In September 2005, defendant filed a pro se postconviction petition. The

circuit court appointed counsel to represent defendant, and counsel twice amended

defendant's petition. In June 2007, the court granted the State's motion to dismiss, and

defendant appeals from that second-stage dismissal. We affirm in part, reverse in part,

and remand for further proceedings.

I. BACKGROUND

The parties are familiar with the factual details of this case, so we need not

reiterate them here. At the time of the offense, defendant and his wife were experiencing marital difficulties. On September 12, 2000, defendant sexually assaulted his wife and was charged and convicted of the crimes at issue.

On September 12, 2005, after his trial and direct appeal, defendant filed a pro se postconviction petition, claiming his trial counsel was ineffective for failing to raise the issue of his fitness to stand trial. Initially, the circuit court dismissed defendant's petition as frivolous and patently without merit. Upon defendant's pro se motion to reconsider, the court vacated its order and appointed counsel to represent defendant.

In July 2006, counsel for defendant filed an amended postconviction petition, alleging eight claims of error, focusing primarily on the ineffective assistance of trial and appellate counsel. Defendant's specific allegations are as follows: (1) his trial attorney failed to adequately consult with him about a plea bargain being offered by the State after defendant's first trial, which ended in a mistrial; (2) his trial attorney failed to raise a doubt of defendant's fitness to stand trial; (3) his trial attorney failed to pursue a defense strategy of involuntary intoxication; (4) his trial attorney relied on the deposition of a doctor's opinion, even after defendant informed counsel of the misstatements contained therein; (5) his trial attorney failed to rely on the prior inconsistent statements of other witnesses; (6) his appellate attorneys (the same attorneys that represented defendant at trial) failed to raise on appeal the issue of trial counsel's ineffectiveness regarding the involuntary-intoxication defense; (7) his appellate attorneys failed to raise on appeal the issue of trial counsel's ineffectiveness regarding his failure to adequately consult with defendant about the State's plea bargain; and (8) he is actually innocent of the crimes because he was involuntarily intoxicated.

In April 2007, the State filed a motion to dismiss. In June 2007, the parties convened for a hearing on the State's motion. The circuit court allowed defendant to file a second-amended petition instanter. This second-amended petition added the claim that the trial court had violated defendant's due-process rights by allowing him to proceed to trial when he was legally unfit. After considering the arguments of counsel, the court granted the State's motion, finding defendant had failed to demonstrate a substantial deprivation of his constitutional rights. This appeal followed.

## II. ANALYSIS

The standard by which second-stage dismissals are reviewed is de novo. People v. Enis, 194 Ill. 2d 361, 376, 743 N.E.2d 1, 11 (2000). We begin our review by recalling the familiar principles concerning postconviction proceedings.

The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 through 122-8 (West 2006)) provides a means by which a defendant may challenge his conviction or sentence for violations of federal or state constitutional rights. Such a proceeding is not an appeal of a defendant's underlying judgment, but a collateral attack on the judgment. In order for a defendant to be entitled to postconviction relief, he must establish a substantial deprivation of his constitutional rights of issues that have not been, and could not have been, previously adjudicated. People v. Easley, 192 Ill. 2d 307, 315-16, 736 N.E.2d 975, 984 (2000). "Waiver is not implicated, however, where a defendant's post[]conviction claim relies on evidence dehors the record." Enis, 194 Ill. 2d at 375-76, 743 N.E.2d at 10.

The dismissal of a postconviction petition is warranted at the second stage of the proceedings only when the allegations in the petition, liberally construed in light

of the trial record, fail to make a substantial showing of a constitutional violation. People v. Coleman, 183 Ill. 2d 366, 382, 701 N.E.2d 1063, 1072 (1998). At the second stage, "all factual allegations that are not positively rebutted by the record are accepted as true." People v. Hall, 217 Ill. 2d 324, 334, 841 N.E.2d 913, 920 (2005).

Defendant claims the circuit court "overstepped [its] authority" by ruling on the merits of the petition, rather than conducting the proper second-stage inquiry of determining only the sufficiency of the pleading. Indeed, our supreme court has stated that "'it is not the intent of the [A]ct that [such] claims be adjudicated on the pleadings.'" Coleman, 183 Ill. 2d at 382, 701 N.E.2d at 1072, quoting People v. Airmers, 34 Ill. 2d 222, 226, 215 N.E.2d 225, 228 (1966). However, that principle only applies when a petitioner's claims are based upon matters outside the record. Coleman, 183 Ill. 2d at 382, 701 N.E.2d at 1072. Thus, despite defendant's contention, it is proper for a court to review not only the factual sufficiency, but the legal sufficiency of defendant's petition in light of the trial court record and applicable law. People v. Morris, 43 Ill. 2d 124, 128, 251 N.E.2d 202, 204 (1969).

A. Defendant's Allegation of a Due-Process Violation

Defendant first claims that his due-process rights were violated when he was tried at a time when he was taking high doses of prescription psychotropic medication, causing him to be unfit to stand trial. He claims this allegation was sufficiently pled in the petition so as to avoid second-stage dismissal; and thus, the circuit court erred in making a determination on defendant's competence rather than allowing the issue to proceed to an evidentiary hearing.

Defendant has forfeited review of this issue by failing to raise it on direct

appeal. See People v. Page, 193 Ill. 2d 120, 135, 737 N.E.2d 264, 272 (2000). This is a claim that could have been previously raised as it was a matter of record that defendant was taking prescription medication. In fact, the trial court considered the issue at a pretrial hearing in September 2001 and questioned defendant's trial counsel about defendant's fitness to appreciate and understand the proceedings. Defense counsel responded that in his opinion, defendant was able to effectively participate in his defense despite the specified amount of psychotropic medications defendant was taking at the time. Referring to section 104-21(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/104-21(a) (West 2000) ("A defendant who is receiving psychotropic drugs shall not be presumed to be unfit to stand trial solely by virtue of the receipt of those drugs or medications")), the court found that defendant had failed to rebut the presumption that he was fit to stand trial. Despite his opportunity to do so, defendant did not raise the issue on direct appeal and is therefore precluded from raising it here for the first time.

However, "[i]t is well established that '[t]he doctrine of waiver does not bar review of an issue when the waiver arises from ineffective assistance of appellate counsel.' " People v. Moore, 177 Ill. 2d 421, 428, 686 N.E.2d 587, 592 (1997), quoting People v. Foster, 168 Ill. 2d 465, 474, 660 N.E.2d 951, 955 (1995). We discuss that issue below.

### B. Ineffective Assistance of Counsel

Defendant claims that he received the ineffective assistance of counsel when his trial and appellate attorneys (the same attorneys) failed to demand a fitness hearing. To succeed on a claim of ineffective assistance of trial counsel, a defendant

- 5 -

must satisfy the following two-pronged Strickland test: a defendant must allege facts which demonstrate that counsel's representation fell below an objective standard of reasonableness and that reasonable probability exists that, but for counsel's errors, the result of the trial would have been different. Strickland v. Washington, 466 U.S. 668, 688, 694, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2064, 2068 (1984).

## 1. Trial Counsel

The test for evaluating prejudice is whether a reasonable probability exists that, if defendant would have received a section 104-21(a) (725 ILCS 5/104-21(a) (West 2000)) fitness hearing, the result of the proceeding would have been that he was found unfit to stand trial. People v. Mitchell, 189 Ill. 2d 312, 334, 727 N.E.2d 254, 268 (2000). We find that such a reasonable probability does not exist in this case.

The prosecution of a defendant who is not fit to stand trial violates due process. People v. Haynes, 174 Ill. 2d 204, 226, 673 N.E.2d 318, 328 (1996). In Illinois, a defendant is presumed to be fit to stand trial and will be considered unfit only if, because of the defendant's mental or physical condition, the defendant is unable to understand the nature and purpose of the proceedings against him or her or to assist in his or her defense. 725 ILCS 5/104-10 (West 2000). A defendant is entitled to a fitness hearing only when a bona fide doubt of the defendant's fitness is raised. 725 ILCS 5/104-11(a) (West 2000).

Therefore, to establish that his trial counsel's alleged incompetency prejudiced him within the meaning of Strickland, defendant must show that facts existed at the time of his trial that would have raised a bona fide doubt of his ability to understand the nature and purpose of the proceedings and assist in his defense.

Defendant is entitled to relief on his postconviction claim only if he shows that the trial court would have ordered a fitness hearing had it been aware of the evidence defendant now proffers. People v. Johnson, 183 Ill. 2d 176, 193, 700 N.E.2d 996, 1004-05 (1998). Since defendant's postconviction petition was dismissed without an evidentiary hearing, "[t]he critical inquiry is whether the facts presented in defendant's post[]conviction petition raised a bona fide doubt of his fitness to stand trial." Johnson, 183 Ill. 2d at 193, 700 N.E.2d at 1005. We find that they do.

According to psychologist Dr. Daniel J. Cuneo's January 2007 evaluation (attached to defendant's postconviction petition), he had evaluated defendant in June 2001 at defendant's trial counsel's request. However, counsel did not want Dr. Cuneo to submit a report, and he destroyed his notes from the evaluation. This raises concern about trial counsel's representation. What was it that counsel knew about defendant's mental state that he did not want revealed? Dr. Cuneo said that at the time of the offense, defendant was taking "extremely high doses of the psychotropic medication, Effexor." He opined that defendant's "ingestion of excessive dosages of prescribed psychotropic medication at the time of his trial would have substantially impaired his ability to understand the nature and purpose of the proceedings against him and his ability to assist in his own defense." In his opinion, defendant was unfit to stand trial in March 2002.

Defendant's allegation in his postconviction petition and his supporting documentation are sufficient to raise a question of whether defendant suffered a substantial violation of his constitutional right to effective assistance of trial counsel. This issue should proceed to an evidentiary hearing for the circuit court to probe into

trial counsel's knowledge and related conduct with regard to defendant's fitness.  We find that defendant has presented facts raising a bona fide doubt of his fitness to stand trial.  See Johnson, 183 Ill. 2d at 193, 700 N.E.2d at 1005.  These facts are sufficient to sustain defendant's burden, allowing the issue to proceed to a third-stage inquiry.

### 2.  Appellate Counsel

Claims of ineffective assistance of appellate counsel are also evaluated under the Strickland test.  People v. Childress, 191 Ill. 2d 168, 175, 730 N.E.2d 32, 36 (2000).  "A defendant who claims that appellate counsel was ineffective for failing to raise an issue on appeal must allege facts demonstrating that such failure was objectively unreasonable and counsel's decision prejudiced [him].  If the underlying issue is not meritorious, then defendant has suffered no prejudice."  Enis, 194 Ill. 2d at 377, 743 N.E.2d at 11.  "[I]t is not incompetence of counsel to refrain from raising issues that in his judgment are without merit."  Mitchell, 189 Ill. 2d at 332, 727 N.E.2d at 267.

The trial court record belies defendant's assertion that his appellate counsel was ineffective for failing to raise the fitness issue on direct appeal.  Defendant's exchanges with the trial judge, his detailed testimony at trial and sentencing, and counsel's representations to the court about defendant's involvement in his defense do not indicate that defendant was confused, impaired, or did not understand the nature of the proceedings or was unable to assist in his defense.  As mentioned above, defendant's trial counsel informed the trial court that defendant was taking prescribed psychotropic medication.  Defendant's counsel and the prosecutor both represented to the court that they had no reason to believe defendant was adversely affected by the medication so as to interfere with his defense.  After receiving detailed information about the dosages of

drugs that defendant was ingesting at the time, the court undertook its own evaluation of defendant. The court asked defendant if he felt the drugs affected his ability to understand and appreciate the proceedings or participate in his defense. Defendant answered no. After considering this evidence and its own observations, the court found defendant had failed to rebut the presumption that he was fit to stand trial.

Even though defendant was represented by the same attorney during trial and on appeal, counsel, while performing his duties as appellate counsel, had no reason, given the state of the trial court record, to believe that this court would have found that defendant was denied the effective assistance of counsel by trial counsel's failure to demand a fitness evaluation. Assuming, for this purpose only, that trial counsel was ineffective, his arguable negligent conduct has no bearing on his duties as appellate counsel. When reviewing the trial court record for the purpose of preparing the appeal, appellate counsel would have seen that trial counsel had presented the issue of defendant's fitness to the trial court. The court (relying on input from counsel, the prosecutor, and defendant) found no reason to doubt defendant's fitness to stand trial or make reasoned decisions about a plea bargain. Appellant counsel's decision not to raise the issue on direct appeal after reviewing the record for potential errors was not objectively unreasonable. We find defendant's petition did not make a substantial showing of a constitutional violation with regard to this issue.

C. Involuntary-Intoxication Defense

Defendant also asserts a claim of actual innocence based upon involuntary intoxication pursuant to section 6-3 of the Criminal Code of 1961 (720 ILCS 5/6-3 (West 2006) ("A person who is in an intoxicated or drugged condition is criminally responsible

for conduct unless such condition is involuntarily produced and deprives him of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law")). He claims the quantity of psychotropic medication that he was taking at the time of the offense substantially impaired his mental capacity.

Defendant did not raise this defense at trial, but he claims he should be allowed to raise the defense at a new trial because a 2006 Illinois Supreme Court decision held that the ingestion of prescribed medication with negative unwarned side effects could satisfy the "involuntariness" requirement of the defense. See People v. Hari, 218 Ill. 2d 275, 293, 843 N.E.2d 349, 359 (2006) ("An unexpected and unwarned adverse effect of a drug taken on doctor's orders falls within the ordinary and popularly understood definition of 'involuntarily'"). Prior to Hari, Illinois courts had limited the definition of "involuntary" to a defendant who was intoxicated due to a trick, artifice, or force. See, e.g., People v. Rogers, 123 Ill. 2d 487, 508, 528 N.E.2d 667, 677 (1988); People v. Downey, 162 Ill. App. 3d 322, 335, 515 N.E.2d 362, 370 (1987); People v. Gerrior, 155 Ill. App. 3d 949, 952, 508 N.E.2d 1119, 1122 (1987); People v. Larry, 144 Ill. App. 3d 669, 677, 494 N.E.2d 1212, 1218 (1986); People v. Quinn, 46 Ill. App. 3d 579, 583, 360 N.E.2d 1221, 1224 (1977); People v. Walker, 33 Ill. App. 3d 681, 688, 338 N.E.2d 449, 454 (1975). Defendant claims the court's decision in Hari should be applied retroactively because it served as a clarification of the law, not a change to it.

The State argues that the Hari decision announced a new rule, which would not require retroactive application to defendant's postconviction proceedings. See Moore, 177 Ill. 2d at 430, 686 N.E.2d at 592 (decisions that announce new rules are

- 10 -

not ordinarily given retroactive application to postconviction proceedings). Thus, to determine whether <u>Hari</u> should be applied retroactively, we must determine whether the decision announces a "new rule"or whether it serves merely as a clarification of the statute and precedent.

In <u>Moore</u>, our supreme court set forth some guidance in determining when a reviewing court's decision should be applied retroactively on collateral review. Referring to the United States Supreme Court's decision in <u>Teague v. Lane</u>, 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989) (a decision adopted by our supreme court in <u>People v. Flowers</u>, 138 Ill. 2d 218, 237, 561 N.E.2d 674, 682 (1990)), the <u>Moore</u> court noted only two exceptions to allow a new rule to be available for consideration on collateral review: One, when a new rule places " ' "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to pro-scribe." [Citation.]' " <u>Moore</u>, 177 Ill. 2d at 430, 686 N.E.2d at 593, quoting <u>Teague</u>, 489 U.S. at 307, 103 L. Ed. 2d at 353, 109 S. Ct. at 1073; and two, when a new rule " 'requires the observance of "those procedures that . . . are 'implicit in the concept of ordered liberty.' " [Citations.]' " <u>Moore</u>, 177 Ill. 2d at 430, 686 N.E.2d at 593, quoting <u>Teague</u>, 489 U.S. at 307, 103 L. Ed. 2d at 353, 109 S. Ct. at 1073. The issue before the court in <u>Moore</u> was whether its decision in <u>People v. Kilpatrick</u>, 167 Ill. 2d 439, 657 N.E.2d 1005 (1995), announced a new rule or merely applied existing precedent to the facts of the case.

In <u>Kilpatrick</u>, the court held that section 5-8-1(c) of the Unified Code of Corrections (730 ILCS 5/5-8-1(c) (West 1992) (on a motion to reconsider, the trial court may not increase a defendant's sentence)) prohibited a trial court from increasing

consecutive sentences of 6 and 9 years to a single 15-year sentence.  Kilpatrick, 167 Ill. 2d at 446-47, 657 N.E.2d at 1008.  The court held that the aggregate sentence served as an increase in the sentence, despite the fact that the period of imprisonment remained the same.  Pursuant to the plain language of section 5-8-1(c), the change violated the statute and was impermissible.  Kilpatrick, 167 Ill. 2d at 447, 657 N.E.2d at 1008.

Moore held that Kilpatrick did not announce a new rule but "merely applied existing precedent and statutory law to the facts of the case."  Moore, 177 Ill. 2d at 433, 686 N.E.2d at 594.  "In general, however, a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Govern-ment.  [Citations.]  To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." (Emphasis omitted.)  Teague, 489 U.S. at 301, 103 L. Ed. 2d at 349, 109 S. Ct. at 1070. According to Moore, the Kilpatrick decision "was compelled by [case law] and Illinois statutory law."  Moore, 177 Ill. 2d at 435, 686 N.E.2d at 595.  The court also noted that the "new-rule" analysis did not change even though other appellate districts had previously reached results contrary to Kilpatrick.  "For a decision to be considered a new rule, its outcome must be 'susceptible to debate among reasonable minds.' "  Moore, 177 Ill. 2d at 435, 686 N.E.2d at 595, quoting Butler v. McKellar, 494 U.S. 407, 415, 108 L. Ed. 2d 347, 356, 110 S. Ct. 1212, 1217 (1990).

We find Hari announced a new rule because it broadens the scope of the defense of involuntary intoxication beyond the plain language of the statute and does not constitute a mere application of existing precedent.  Hari's ruling is an outcome that is "susceptible to debate among reasonable minds."  Butler, 494 U.S. at 415, 108 L. Ed.

- 12 -

2d at 356, 110 S. Ct. at 1217.  Not only did the Hari court not apply existing precedent, it, in fact, rejected some precedent that had previously excluded intoxication by prescribed medication.  See Gerrior, 155 Ill. App. 3d at 953, 508 N.E.2d at 1122; Walker, 33 Ill. App. 3d at 688, 338 N.E.2d at 454.  For the first time, the court ruled that a defendant could be considered involuntarily intoxicated when he had ingested prescription medications at the time he committed an offense.

Given that Hari announced a new rule, we must determine whether it should be given full retroactive effect.  "Illinois follows the federal rule that a decision that narrows a substantive criminal statute must have full retroactive effect in collateral attacks."  People v. Rodriguez, 355 Ill. App. 3d 290, 294, 823 N.E.2d 224, 229 (2005).  We note that the Teague rule applies only to new rules of criminal procedure, not substantive rules.  Because the issue involves the application of a substantive affirmative defense, we need not analyze the Teague exceptions set forth above.  Instead, we follow the federal doctrine that any decision that narrows the applicability of a substantive criminal statute is fully retroactive.  "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes."  Schriro v. Summerlin, 542 U.S. 348, 353, 159 L. Ed. 2d 442, 449, 124 S. Ct. 2519, 2523 (2004).  A decision that modifies the elements of an offense is normally substantive rather than procedural.  "New elements alter the range of conduct the statute punishes, rendering some formerly unlawful conduct lawful or vice versa."  Schriro, 542 U.S. at 354, 159 L. Ed. 2d at 450, 124 S. Ct. at 2524.

We receive direction from the United States Supreme Court's decision in Bousley v. United States, 523 U.S. 614, 620-21, 140 L. Ed. 2d 828, 838-39, 118 S. Ct.

- 13 -

1604, 1610 (1998).  In <u>Bousley</u>, the Court was faced with the decision of whether to apply a new rule announced in a previous case (<u>Bailey v. United States</u>, 516 U.S. 137, 144, 133 L. Ed. 2d 472, 480-81, 116 S. Ct. 501, 506 (1995)) retroactively to the petitioner's collateral <u>habeas</u> <u>corpus</u> challenge.  The new rule announced in <u>Bailey</u> limited the definition of the term "use" within the meaning of a statute prohibiting the use of a firearm during a drug-trafficking crime.  See 18 U.S.C. §924(c)(1) (1994).  In deciding whether to apply <u>Bailey</u> retroactively, the Court considered the nature of the issue and rejected the application of <u>Teague</u> due to its substantive nature.  The Court said:  "And because <u>Teague</u> by its terms applies only to procedural rules, we think it is inapplicable to the situation in which this Court decides the meaning of a criminal statute enacted by Congress."  <u>Bousley</u>, 523 U.S. at 620, 140 L. Ed. 2d at 838, 118 S. Ct. at 1610.  In addressing the important distinction between substance and procedure, the Court noted that decisions regarding the substantive content of criminal statutes "necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal.' "  <u>Bousley</u>, 523 U.S. at 620, 140 L. Ed. 2d at 839, 118 S. Ct. at 1610, quoting <u>Davis v. United States</u>, 417 U.S. 333, 346, 41 L. Ed. 2d 109, 119, 94 S. Ct. 2298, 2305 (1974).  For that reason, a defendant should not be precluded from relying on previous decisions interpreting statutes in a collateral challenge to his arguably questionable conviction.  <u>Bousley</u>, 523 U.S. at 621, 140 L. Ed. 2d at 839, 118 S. Ct. at 1610.

In <u>Hari</u>, the court announced a new rule that in all practical respects is the equivalent to one that limits the conduct proscribed by a criminal statute.  The <u>Hari</u> decision served to broaden the circumstances for when a defendant can raise the affirmative defense of involuntary intoxication.  A court's decision that broadens the

circumstances for when a defendant can assert an affirmative defense has the same practical effect as a decision that limits the conduct proscribed by a criminal statute. Both types of decisions serve to limit the type of conduct that is criminal under the statute.

The supreme court's decision in <u>Hari</u> raises grave doubts about the accuracy of the original judgment in this case. See <u>Schriro</u>, 542 U.S. at 352-53, 159 L. Ed. 2d at 448-49, 124 S. Ct. at 2522-23 (the Supreme Court treats any decision as retroactive for the purpose of collateral attack when the change raises grave doubts about the accuracy of the original judgment). Grave doubts arise with new substantive rules that raise the possibility that "a defendant stands convicted of 'an act that the law does not make criminal.' " <u>Bousley</u>, 523 U.S. at 620, 140 L. Ed. 2d at 839, 118 S. Ct. at 1610, quoting <u>Davis</u>, 417 U.S. at 346, 41 L. Ed. 2d at 119, 94 S. Ct. at 2305.

It is undisputed that defendant was ingesting some quantity of psycho-tropic medications at the time of the offense. In 2006, the <u>Hari</u> court held that the jury could be instructed on a defense of involuntary intoxication if a defendant was taking prescribed medications and suffered adverse unwarned effects from those medications at the time he committed the charged offense. If defendant had raised that defense at his April 2002 trial, it would have been rejected because, at the time, Illinois law disallowed such a defense absent evidence that his intoxication was the result of "trick, artifice[,] or force." <u>Rogers</u>, 123 Ill. 2d at 508, 528 N.E.2d at 677. However, after <u>Hari</u>, the definition of criminal conduct potentially changed for a defendant who was under the influence of certain prescribed medications.

Section 6-3 of the Criminal Code of 1961 (720 ILCS 5/6-3 (West 2006))

- 15 -

provides: "A person who is in an intoxicated or drugged condition is criminally responsible for conduct unless such condition is involuntarily produced and deprives him of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." Applying the rule of statutory construction and the dictionary definition of "involuntary," the Hari court held that a "drugged condition" is " 'involuntarily produced' " if a defendant experiences "an unexpected adverse side effect of a prescription drug that was unwarned by the prescribing doctor, the [Physicians' Desk Reference,] or the package insert." Hari, 218 Ill. 2d at 292, 843 N.E.2d at 359. This decision was a "contrary legal conclusion" to that set forth in Rogers, 123 Ill. 2d at 508, 528 N.E.2d at 677, where the court limited "'involuntary intoxication'" to "intoxication induced by some external influence such as trick, artifice[,] or force." The court held that "[t]o the extent that Rogers, Downey, Gerrior, Walker, and Larry can be read as excluding the unexpected and unwarned adverse side effects from medication taken on doctor's orders from the plain meaning of 'involuntarily produced,' they are overruled." Hari, 218 Ill. 2d at 294, 843 N.E.2d at 360.

The new rule announced in Hari has the potential of making certain conduct (previously defined as criminal) noncriminal if a defendant can prove he was taking prescribed medication and suffered from unwarned adverse side effects, which caused mental deficiencies at the time he committed the offense. "Involuntary intoxication is an affirmative defense[,] which would exculpate an accused if the trier of fact believed that the elements of involuntary intoxication had been proven." Hari, 218 Ill. 2d at 295, 843 N.E.2d at 361. For these reasons, we find that potential grave doubts about the accuracy of defendant's convictions are raised; and therefore, he should be

- 16 -

allowed to rely on the Hari decision in support of the claim alleged in his postconviction petition that his convictions are constitutionally infirm. We reverse the trial court's order dismissing defendant's postconviction petition on this ground. As a basis for its dismissal, the court stated: "I believe that Hari did have new interpretation of law and I don't believe it was retroactive." For the reasons stated above, we disagree. We find a retroactive application of Hari is sufficient to sustain defendant's burden of alleging a substantial deprivation of his constitutional rights; and therefore, his petition should proceed to an evidentiary hearing on the issue. The trial court may then in a stage-three hearing make a determination as to whether a Hari defense could have been substantiated.

## D. Ineffective Assistance of Counsel

Defendant also argues that his trial counsel was ineffective for failing to present sufficient evidence to support the involuntary intoxication. As explained above, the facts upon which defendant relies for the involuntary intoxication defense had been rejected by Illinois law as insufficient to support the defense until Hari . Therefore, it was not unreasonable for trial counsel to forego pursuing such a defense. Given the state of the law at the time of defendant's trial, defendant cannot satisfy either prong of a Strickland analysis on this issue.

## III. CONCLUSION

For the foregoing reasons, we affirm in part and reverse in part the circuit court's order dismissing defendant's postconviction petition and remand for further proceedings: We reverse the second-stage dismissal of defendant's claim of ineffective assistance of trial counsel and remand to allow the issue to proceed to a third-stage

inquiry; we reverse the dismissal of defendant's claim that <u>Hari</u> should be applied retroactively to afford him an involuntary-intoxication defense in a new trial and remand for a third-stage evidentiary hearing after which the court may determine whether a <u>Hari</u> defense could have been substantiated.  We otherwise affirm.  Because the State has in part successfully defended a portion of the criminal judgment, we grant the State its statutory assessment of $50 against defendant as costs of this appeal.

Affirmed in part and reversed in part; cause remanded with directions.

COOK, J., concurs.

MYERSCOUGH, J., dissents.

JUSTICE MYERSCOUGH, dissenting:

I respectfully dissent. I would affirm in full. Defendant has not established ineffective assistance of counsel. Under Strickland, defendant must show facts existed at the time of trial that would have raised a bona fide doubt about his ability to understand the nature and purpose of the proceedings and assist in his defense such that the trial court would have ordered a fitness hearing.

The record refutes the existence of a bona fide doubt. In fact, the trial court addressed the issue of fitness at length on the record. Defendant clearly understood the proceedings and assisted counsel with the defense. Defense counsel had defendant examined by Dr. Cuneo and afterward did not want a report. Dr. Cuneo destroyed the notes from the examination. The majority implies able defense counsel wanted exculpatory evidence destroyed.

> "However, counsel did not want Dr. Cuneo to submit a report, and he destroyed his notes from the evaluation. This raises concern about trial counsel's representation. What was it that counsel knew about defendant's mental statement that he did not want revealed?" Slip op. at 7.

However, nothing in the record substantiates that anyone instructed Dr. Cuneo to destroy his notes or that counsel wanted evidence about defendant's mental state hidden. Dr. Cuneo's report states:

> "I had also previously evaluated [defendant] in June 2001 at the request of his then attorney, Mr. John Gray Noll. Mr. Noll did not wish me to write a report[,] and my notes from

- 19 -

this evaluation were destroyed."

Further, the majority ignores what is missing in the report and the postconviction petition. Nowhere does defendant or Dr. Cuneo state that at the time of the evaluation or at the time of trial Dr. Cuneo found defendant unfit. Defense counsel no doubt did not want a report because Dr. Cuneo found defendant fit at that time. Defendant cannot now come in with a new attorney and a different opinion from the doctor without first establishing Dr. Cuneo found him unfit at the time of trial. The petition and report only state that Dr. Cuneo is now of the opinion that defendant was unfit at the time of trial.

Moreover, defendant's claim of actual innocence based upon involuntary intoxication is also specious. Dr. Cuneo's report simply does not support the defense of involuntary intoxication because Dr. Cuneo has no such opinion.

"I am unable to form an opinion at the current time as to whether [defendant] would qualify for an intoxication defense. According to his statements and past reports[,] he was hallucinating at the time and his judgment [was] impaired. He was taking prescribed, excessive doses of Effexor[,] which would have impaired his reasoning, increased his impulsivity, and greatly increased his potential for bizarre behavior and acting out. His hallucinations began at the time when he first began taking the Effexor in large doses. I would, though, like to see the police reports and transcripts from the trial prior to my fully forming an opin-

- 20 -

ion on intoxication."

Defendant has forfeited this claim by failing to attach support therefor. Summary dismissal is warranted where (1) defendant failed to support his ineffective-assistance-of-counsel claim with documentation or explain the absence of such documentation, and (2) defendant's claims are refuted by the record. See People v. Collins, 202 Ill. 2d 59, 66, 782 N.E.2d 195, 198 (2002) (finding that a postconviction petition may be summarily dismissed when the petitioner fails to attach necessary affidavits, records, or other evidence or explain their absence); People v. Palmer, 352 Ill. App. 3d 877, 883, 817 N.E.2d 129, 135 (2004) (finding the first-stage dismissal of a postconviction petition when the record contradicts its allegations). That Dr. Cuneo may someday form an opinion on involuntary intoxication if he sees police reports and transcripts from the trial is not enough to state the gist of a constitutional violation. The time has come in the defendant's appeals to have some finality. The amended petition was properly dismissed at stage two on the State's motion.

For these reasons, I would affirm the trial court.