NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 200392-U

NO. 4-20-0392

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 23, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Logan County |
| PERRY R. ALBERTS, | ) | No. 00CF221 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William A. Yoder, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices DeArmond and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*: We grant appellate counsel's motion to withdraw and affirm the trial court's
denial of defendant's motion for leave to file a successive postconviction petition.

¶ 2    This case comes to us on the motion of the Office of the State Appellate Defender

(OSAD) to withdraw as counsel on the ground that no meritorious issue can be raised on this

appeal from the trial court's denial of leave to file a successive postconviction petition. We grant

OSAD's motion and affirm the trial court's judgment.

¶ 3    I. BACKGROUND

¶ 4    A. Trial and Direct Appeal

¶ 5    In April 2002, a jury found defendant, Perry R. Alberts, guilty of 11 counts of

aggravated criminal sexual assault. In May 2002, the trial court sentenced defendant to a term of

6 years' imprisonment on each count, three of which included an additional 15-year firearm

enhancement, all to be served consecutively for an aggregate sentence of 111 years' imprisonment. On direct appeal, defendant argued (1) the State failed to prove him guilty beyond a reasonable doubt, (2) the trial court erred by restricting his cross-examination of the victim, (3) his right to confront witnesses was violated when the court prohibited him from questioning the victim on her prior sexual history, (4) the court erred by admitting evidence of defendant's prior bad acts, (5) he was convicted of multiple crimes that stemmed from the same physical act, (6) the firearm enhancement violated the proportionate penalties clause and the prohibition against double enhancement, (7) the court improperly told the jury the bodily harm was the injury to the victim's mouth, and (8) his sentence was excessive. This court affirmed most of defendant's convictions and sentences, reversing one and vacating the corresponding sentence based on the one-act, one-crime rule. *People v. Alberts*, 353 Ill. App. 3d 1113 (2004) (table) (unpublished order under Supreme Court Rule 23).

¶ 6                                B. Postconviction Petition

¶ 7            In September 2005, defendant filed a *pro se* postconviction petition. In November 2005, the trial court dismissed defendant's postconviction petition at the first stage, finding defendant's claims frivolous and patently without merit. Defendant filed a motion to reconsider, which the court granted. The court appointed counsel who filed an amended postconviction petition largely raising claims of ineffective assistance of trial and appellate counsel. The amended petition raised the following claims: (1) defendant's trial counsel failed to adequately consult with him regarding the State's plea bargain offer, (2) trial counsel failed to raise a doubt of defendant's fitness to stand trial, (3) counsel failed to pursue a defense strategy of involuntary intoxication, (4) counsel relied on a video deposition from a doctor even though defendant pointed out misstatements contained therein, (5) counsel failed to rely on prior

inconsistent statements made by other witnesses, (6) appellate counsel (the same counsel that represented defendant at trial) failed to raise on appeal the claim that trial counsel provided ineffective assistance for failing to raise involuntary intoxication, (7) appellate counsel failed to raise the claim that trial counsel failed to adequately consult with defendant regarding the State's plea bargain offer, and (8) he was actually innocent of the crimes because he was involuntarily intoxicated. In April 2007, the State filed a motion to dismiss. In June 2007, defense counsel filed a second amended petition adding a claim that the trial court violated defendant's due process rights by allowing him to proceed to trial when he was legally unfit. The court granted the State's motion to dismiss defendant's postconviction petition, and defendant appealed.

¶ 8　　　　On appeal, this court reversed in part and remanded for a third-stage evidentiary hearing on two of the issues raised in defendant's postconviction petition: (1) whether defendant's constitutional right to effective assistance of trial counsel was violated where counsel failed to seek a fitness evaluation, and (2) defendant's claim of actual innocence based on involuntary intoxication. *People v. Alberts*, 383 Ill. App. 3d 374, 385-86, 890 N.E.2d 1208, 1218-19 (2008).

¶ 9　　　　Following remand, defendant filed a third amended postconviction petition. In March 2012, after conducting an evidentiary hearing, the trial court entered a lengthy written order dismissing the postconviction petition. At the third-stage evidentiary hearing, defendant testified, in part, that Dr. Hauter increased his prescription for lorazepam "to as needed three .5's at a time." On the day of the alleged assault, defendant testified, "I was taking Synthroid .1 milligrams. I was taking Effexor 375 milligrams three in the morning, two at night 75 milligram pills. I was taking Lorazepam. Those were .5 and I was taking three a day, and Temazepam I was taking 30 milligrams once a day of Temazepam." Defendant testified he took three 0.5

milligram pills of lorazepam at 6 a.m. on the date of the alleged assault. Defendant further testified he took an additional three 0.5 milligram pills of lorazepam during the course of the alleged assault.

¶ 10    This court summarized Dr. James T. O'Donnell's testimony as follows:

"Defendant next called Dr. James Thomas O'Donnell, an expert in the field of pharmacology. He said the medications defendant was taking at the time of the offense were intended to alleviate the overall general effects of depression. Though the prescribed dosage of Effexor, 375 milligrams, was considered a maximum dose, it was considered 'excessive' for defendant. Dr. O'Donnell said Effexor was an antidepressant, Temazepam was a sleeping pill, and Lorazepam was an antianxiety drug. He said the side effects of Effexor, which included dysphoria, aggression, impulsivity, and suicidal and homicidal tendencies, were not recognized in 2000, and are still not completely understood. He said defendant had been 'rapidly accelerated to' the maximum dose of Effexor, which only served to increase the drug's toxicity. Most likely, the toxicity of Effexor, which manifested itself in the form of increased agitation, caused defendant to take more Lorazepam than what had been prescribed.

Dr. O'Donnell formed his professional opinion after (1) reviewing some of defendant's medical records, (2) a telephone interview of defendant, and (3) applying his knowledge of the

effects of this medication. In Dr. O'Donnell's opinion, defendant could not have conformed his conduct to meet the requirements of the law. According to the doctor, defendant was involuntarily intoxicated as a result of the excessive dose of Effexor and could not appreciate the criminality of his conduct. At the time defendant took the additional three Lorazepam tablets, he was already involuntarily intoxicated.

Dr. O'Donnell testified he had relied on Dr. Baluga's psychiatric notes from a September 25, 2000, meeting with defendant, where defendant had described himself as zombie-like. (It is important to note that Dr. Baluga reported she had lost her clinical notes and had reconstructed her report sometime later. This reconstructed report indicated defendant was still taking Effexor, though defendant had actually stopped taking Effexor approximately one week prior to September 25, 2000.)

On cross-examination, Dr. O'Donnell acknowledged that alcohol, a voluntary act, would add to defendant's intoxication, and that defendant had been warned by Dr. Pittman not to drink alcohol with Effexor. Dr. O'Donnell also acknowledged he had read the State's expert, Dr. Pan's, report, as well as some of the excerpts that Dr. Pan had relied upon in preparing his report. One such excerpt was from defendant's counseling session with Marilyn Reinhart on June 28, 2001, where defendant told Reinhart that he

realized he had a ' "severe problem" ' with alcohol, and that

alcohol ' "had a lot to do with him attacking his wife." ' However,

Dr. O'Donnell stated this admission by defendant did not change

his ultimate opinion, though he did reiterate that alcohol could

either exacerbate or lower inhibitions, especially when combined

with Effexor." *People v. Alberts*, 2013 IL App (4th) 120363-U,

¶¶ 9-12.

¶ 11 This court further summarized the State's expert testimony from Dr. Phillip Pan as follows:

"The State called its expert, Dr. Philip Pan, a psychiatrist

who had conducted a clinical interview of defendant on October

23, 2009. In his written report from the interview, Dr. Pan opined,

to a reasonable degree of psychiatric certainty, Effexor did not

involuntarily intoxicate defendant on the date of the incident. Dr.

Pan believed defendant was intoxicated on the night of the incident

after taking an excessive dose of Lorazepam and combining

Temazepam and Lorazepam with alcohol, causing defendant to be

*voluntarily* intoxicated. Dr. Pan's opinion was based on

defendant's description of how he took the medication and how it

had been prescribed. Dr. Pan further opined, again within a

reasonable degree of psychiatric certainty, that defendant's

intoxication was not to a point where he could not appreciate the

criminality of his conduct or conform his conduct to the

requirements of the law. Dr. Pan said he believed defendant had not before taken three Lorazepam tablets together as he had on the day of the incident. Dr. Pan noted he found Dr. Baluga's reconstructed report to be of little use and unreliable due to her reported inaccuracies.

On cross-examination, Dr. Pan said Effexor most likely did not play any role in defendant's intoxication. Defendant had not reported the negative side effects he now reports to any of his medical or mental-health professionals." *Id.* ¶¶ 14-15.

Dr. Pan's report concluded the primary cause of any departure from defendant's normal behavior was the result of "voluntary intoxication on benzodiazepines with or without additional alcohol." On appeal, this court affirmed, finding "defendant failed to demonstrate he suffered a substantial deprivation of his constitutional rights by not being allowed to present at a future trial an affirmative defense of involuntary intoxication." *Id.* ¶ 35.

¶ 12                                    C. Section 2-1401 Petition

¶ 13            In January 2013, defendant filed a section 2-1401 petition asserting the 15-year firearm enhancements on three of his convictions violated the identical elements prong of the proportionate penalties clause of the Illinois constitution. Defendant further argued the 15-year firearm enhancement could not be severed from the offense of criminal sexual assault and his three convictions for aggravated criminal sexual assault with a firearm should be vacated. In July 2014, the trial court entered an amended judgment vacating the 15-year enhancements and entered three terms of 6 years' imprisonment, consecutive to one another and to all other counts. Defendant filed a petition for rehearing on the severability issue, and the court appointed

counsel. After a hearing, the court denied the second amended petition for rehearing. An appeal was filed and later dismissed on defendant's own motion.

¶ 14                                    D. Successive Postconviction Petition

¶ 15          In August 2019, defendant filed a motion for leave to file a successive postconviction petition and an accompanying petition. The motion for leave to file a successive postconviction petition identified the following issues: (1) involuntary intoxication, (2) false testimony, (3) search and seizure, (4) failure to suppress, and (5) ineffective assistance of trial, appellate, and postconviction counsels for failing to argue six of defendant's convictions were void because they were based on the same aggravating element.

¶ 16                                    1. *Involuntary Intoxication*

¶ 17          As to the issue of involuntary intoxication, defendant asserted he was denied due process because the State knowingly and intentionally presented a fabricated medical report from Vine Street Clinic and the State's expert at the third-stage evidentiary hearing on defendant's postconviction petition relied on the false report in testifying that defendant was not involuntarily intoxicated by his medications. Defendant further asserted that a recently discovered medical report from Memorial Medical Center proved the Vine Street Clinic report was false. The Vine Street Clinic report indicated defendant "was prescribed Effexor XR 75 mg., 3 caps in the morning and 2 caps at night (total of 375 mg.), Ativan [(lorazepam)] 0.5 mg as needed up to 3 times per day." The Memorial Medical Center report indicated defendant was prescribed "Effexor XR 75 mg three every morning and two every evening" and "Ativan 0.5 mg twice daily as needed for anxiety." As cause, defendant asserted this was his first opportunity to present new evidence outside the third-stage evidentiary hearing. Defendant supported this claim with an affidavit from his brother, Wayne Alberts, that averred he had been searching for the Memorial

Medical Center report for many years and finally found it with his stepfather's possessions a few weeks after his death. Defendant asserted his stepfather must have received a box of legal material from defendant's counsel at trial and on direct appeal. According to defendant, his stepfather forgot about the legal material because he suffered from dementia. According to defendant, the expert provided false testimony when he relied on the allegedly falsified Vine Street Clinic report and testified lorazepam would be fully in defendant's blood stream in 15 to 30 minutes. Defendant also asserted the State's expert provided additional false testimony regarding who treated defendant and the contents of defendant's medical reports.

¶ 18　　　　　As to prejudice, defendant argued the State's expert "established how the lorazepam was to be taken by the false Vine Street Clinic Report." According to defendant, the Memorial Medical Center report proved the prescription he was given "would have expired by the end of July or mid[-]August depending on the 'as needed' prescription." Defendant further argued the State's expert falsely testified "it would take 15 to 30 minutes before the additional 3 lorazepam would be fully in the blood stream." Defendant argued it took two hours to reach peak concentration following administration of lorazepam. Defendant supported this claim, in part, with an affidavit from Dr. O'Donnell averring the peak concentration of lorazepam occurred two hours after administration. Dr. O'Donnell's affidavit stated, "The last consumption of 3 tablets of lorazepam at ~ 5:30-5:45pm would not be absorbed to any significant amount and thus could not cause any effect (intoxication)." Defendant interpreted the directions on the lorazepam bottle to take three pills when needed, and even if he took six pills, it was 3 milligrams, which was less than one third of the maximum dosage of 10 milligrams. According to defendant, the State's expert's testimony that the way defendant took the pills would voluntarily intoxicate him was disproven by the 2 hour peak absorption time, the 12-hour half-

life, and maximum dosage of 10 milligrams. Defendant asserted this court incorrectly assumed he took the second dose of lorazepam at 4 p.m., when he in fact took the second dose at 5:30 p.m.

¶ 19 Defendant also attacked Dr. Pan's testimony that defendant had not reported any side effects of his medications. Defendant asserted his therapist's records had been turned over to SIU School of Medicine and were being suppressed. Defendant further asserted he was not properly monitored when he was prescribed Effexor and his doctor did not recognize the adverse side effects defendant displayed. Defendant criticized the State's expert testimony at the third-stage evidentiary hearing that defendant was voluntarily intoxicated because it was based on the falsified Vine Street Clinic report and disregarded scientific research on lorazepam.

¶ 20 Defendant also asserted he was denied due process at the third-stage evidentiary hearing where the State's expert eliminated the heading "subjective" from a medical report. Specifically, defendant argued Dr. Pan took a "psycho-therapy session out of context by not including the heading, 'SUBJECTIVE.' " Defendant asserted he did not drink alcohol prior to the alleged sexual assault. Defendant asserted Carla and Robert Kehl had beer but defendant did not drink until after the assault. As cause, defendant asserted that it was the first time he could bring in evidence outside of the earlier third-stage evidentiary hearing. Defendant argued the State did not give the defense an "exculpatory" photograph of empty alcohol containers on defendant's deck prior to the third-stage evidentiary hearing.

¶ 21 As prejudice, defendant argued the photograph of the empty alcohol containers on his deck proved he did not drink before the incident because it showed three empty cans of beer. Defendant argued Carla testified she had two or three beers and Kehl asserted in an affidavit that he and Carla drank the brand portrayed in the photograph and defendant drank a different brand

of beer. Defendant asserted that Dr. Pan took notes from a psychotherapy session out of context where he removed the word subjective because the therapist was asking defendant hypothetical questions and it was not a confession to alcohol consumption. Defendant contended this court was misled into believing defendant consumed alcohol before committing the offense. Defendant asked for a "new trial" on the claim of involuntary intoxication.

¶ 22                                    2. *False Testimony*

¶ 23          Defendant next asserted his brother found a box of legal materials after their mother's death that included Carla's emergency room report from the day of the assaults. Defendant argued Carla gave false testimony at his trial. As cause, defendant claimed he received ineffective assistance of counsel where he "had relayed to his attorney several times that he did not ram his fist up his wife's vagina, place the barrel of a gun up her vagina, or put four of his fingers in her vagina and then lift his wife in the air by her vagina." Defendant further denied sexually assaulting the victim. Defendant argued the State did not turn over the emergency room report as part of discovery in the postconviction proceedings and that prevented counsel from raising the issue in initial postconviction proceedings. As to prejudice, defendant argued Dr. Youmans filed a supplemental opinion stating that if the victim had been forcefully raised up in violent manner by a fist, hand, or fingers in her vagina, there would have been some injury to the vagina or vulva. In part, defendant supported this claim with a June 2018 letter from Dr. Youmans stating that, after reviewing trial testimony, photographs, and other documents, the bruising on Carla's face could have occurred after the emergency room examination and before photographs were taken the following day. In a February 2019 letter, Dr. Youmans stated she reviewed all the medical notes from Carla's emergency room visit and concluded the trauma to Carla's mouth happened prior to examination and there was no evidence of blunt force trauma to

her vulva, although the absence of such trauma did not negate Carla's claim. Additionally, there was evidence of anorectal penetration by a blunt object, indicated by redness, irritation, and the presence of blood.

¶ 24                                    3. *Search and Seizure*

¶ 25         Defendant next asserted he received ineffective assistance of counsel where counsel failed to investigate the issue of wrongful search and seizure. For cause, defendant argued he told trial counsel the search warrant was not for the correct address but trial counsel did not investigate. Defendant argued postconviction counsel failed to read the proceedings and consequently failed to discover this issue. As to prejudice, defendant asserted the description in the search warrant did not match the description of the property authorities searched. Defendant further asserted the ropes and harness collected during the search were highly prejudicial.

¶ 26                                    4. *Failure to Suppress*

¶ 27         Defendant also argued trial counsel failed to investigate defendant's well-documented intoxication and his hearing impediment. According to defendant, trial counsel failed to file a motion to suppress the statements he made to police because they were not made voluntarily. Defendant asserted postconviction counsel failed to read the proceedings and consequently failed to discover this issue. Defendant asserted he was prejudiced because his statement that he did not own guns and did not have a firearm owner's identification card was admitted even though he did not understand his *Miranda* rights due to his intoxication. Defendant also asserted trial counsel should have filed a motion to suppress evidence of inculpatory phone calls defendant made after the incident.

¶ 28                                    5. *Void Counts*

¶ 29 Finally, defendant argued multiple convictions were based on the same aggravating element of him hitting Carla in the mouth. Defendant noted this court found that each penetration was a separate act but argued "each offense requires proof of a different element in aggravation." Defendant asserted the bodily harm was the injury to Carla's mouth. Therefore, defendant argued his convictions were void and could be attacked at any time. To demonstrate cause, defendant argued his trial counsel did not understand the statutory elements of aggravated criminal sexual assault. He again argued postconviction counsel failed to review the entire record of proceedings. To demonstrate prejudice, defendant asserted the jury did not understand the statutory elements of aggravated criminal sexual assault.

¶ 30                                6. *Trial Court's Ruling*

¶ 31 In July 2020, the trial court denied defendant's motion for leave to file a successive postconviction petition. The court concluded defendant's involuntary intoxication claims were precluded because defendant had previously raised involuntary intoxication and litigated the issue through a third-stage evidentiary hearing. The court concluded defendant failed to show cause as to why he had not previously raised his other claims.

¶ 32 This appeal followed.

¶ 33                                II. ANALYSIS

¶ 34 As noted, we consider OSAD's motion to withdraw as counsel on the ground that no meritorious issue can be raised on this appeal from the trial court's denial of leave to file a successive postconviction petition.

¶ 35 Section 122-1(f) of the Post-Conviction Hearing Act (Postconviction Act) (725 ILCS 5/122-1(f) (West 2020)) provides as follows:

"Only one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process."

Thus, for a defendant to obtain leave to file a successive postconviction petition, both prongs of the cause-and-prejudice test must be satisfied. *People v. Guerrero*, 2012 IL 112020, ¶ 15, 963 N.E.2d 909. "A request to file a successive petition based on actual innocence is reviewed under a higher standard than that applicable to the first stage for an initial petition, which only requires that the petition is not frivolous or patently without merit." *People v. Robinson*, 2020 IL 123849, ¶ 43, 181 N.E.3d 37. At this stage, all well-pleaded allegations in the proposed petition and its supporting documentation are taken as true if not positively rebutted by the record. *Id.* ¶ 45. Accordingly, the trial court is precluded from making factual or credibility determinations to determine the legal sufficiency of the petition. *Id.*

¶ 36    We review *de novo* the trial court's denial of a petitioner's motion for leave to file a successive petition for postconviction relief. *People v. Green*, 2012 IL App (4th) 101034, ¶ 30, 970 N.E.2d 101.

- 14 -

¶ 37    As discussed above, defendant raises the following claims: (1) involuntary intoxication, (2) false testimony, (3) search and seizure, (4) failure to suppress, and (5) ineffective assistance of trial, appellate, and postconviction counsels for failing to argue six of defendant's convictions were void because they were based on the same aggravating element.

¶ 38    Any claim of a substantial denial of constitutional rights not raised in the original or an amended postconviction petition is waived. *People v. Flores*, 153 Ill. 2d 264, 274, 606 N.E.2d 1078, 1083 (1992). "Additionally, 'a ruling on a post-conviction petition has *res judicata* effect with respect to all claims that were raised or *could have been raised* in the initial petition.' (Emphasis added.) [Citation.] *** Finally, where a petitioner has previously taken a direct appeal from a judgment of conviction, the judgment of the reviewing court is *res judicata* as to all issues actually decided by the court, and any other claims that could have been presented to the reviewing court, if not presented, are waived." *Id.*

¶ 39    All the issues defendant raises in his motion for leave to file a successive postconviction petition are either waived or barred by the doctrine of *res judicata*. Defendant's claims regarding involuntary intoxication are barred by *res judicata* where the claim of involuntary intoxication was raised in his first postconviction petition, fully litigated through an evidentiary hearing, and affirmed by this court on appeal. The purpose of postconviction proceedings is to allow inquiry into constitutional issues involved "in the proceedings which resulted in his or her conviction." 725 ILCS 5/122-1(a)(1) (West 2020). "The Act does not, however, provide a forum to test the propriety of conduct at an earlier post-conviction proceeding." *Flores*, 153 Ill. 2d at 277.

¶ 40    Nevertheless, defendant asserts he can demonstrate cause for his failure to raise the claims regarding involuntary intoxication during the third-stage evidentiary hearing or on

- 15 -

appeal from the denial of his postconviction petition because the report from the Memorial Medical Center was only recently discovered and this is the first opportunity defendant had to correct errors from the evidentiary hearing. Although defendant claims this Memorial Medical Center report was recently found, he does not argue that it was unknown to him. Indeed, defendant's brother averred he had been looking for the report for years, which suggests defendant was aware of the report. However, defendant's brother failed to provide specific dates as to when the records were transferred from the law firm that handled his trial and direct appeal and were discovered.

¶ 41    Even if defendant could demonstrate cause for not raising this issue earlier, he cannot demonstrate prejudice. First, the Memorial Medical Center report indicated defendant was prescribed "Effexor XR 75 mg three every morning and two every evening" and "Ativan 0.5 mg twice daily as needed for anxiety." The Vine Street Clinic report indicated defendant "was prescribed Effexor XR 75 mg., 3 caps in the morning and 2 caps at night (total of 375 mg.), Ativan [(lorazepam)] 0.5 mg as needed up to 3 times per day." Defendant claims Dr. Pan relied on the Vine Street Record to conclude that defendant was voluntarily intoxicated because he took more lorazepam than instructed. But the Memorial Medical Center report indicates defendant was instructed to take lorazepam only twice per day, which is contrary to defendant's claim that he took the lorazepam as instructed. Defendant testified he took three 0.5 milligram pills of lorazepam at 6 a.m. on the date of the assault and an additional three 0.5 milligram pills of lorazepam during the course of the alleged assault. Defendant's testimony indicated he did not take the lorazepam as instructed in either the Vine Street Clinic report or the Memorial Medical Center report.

¶ 42      Defendant's remaining claims regarding the involuntary intoxication issue should have been explored at the third-stage postconviction evidentiary hearing. Dr. Pan's testimony about lorazepam's absorption time, half-life, and maximum dosage should have been addressed during the evidentiary hearing, and defendant's attempt to "correct" the evidentiary hearing with Dr. O'Donnell's affidavits is merely an attempt to re-open the testimony from the third-stage evidentiary hearing. Defendant had the opportunity to raise these issues during the evidentiary hearing, and he does not identify any reason why these claims could not have been raised earlier.

¶ 43      Defendant further claims that improper reliance on a clinic note from June 2001 caused Dr. Pan to conclude defendant was drinking before the assault. This issue could have been raised during postconviction proceedings and was not, and it is therefore forfeited. Defendant further complains that a photograph of three empty alcohol containers on his deck was not disclosed to his postconviction counsel. However, the photograph was used as an exhibit at trial, and defendant does not assert he made his postconviction counsel aware of the photograph. Moreover, none of defendant's claims related to his consumption of alcohol can meet the prejudice test where Dr. Pan concluded the primary cause of any departure from defendant's normal behavior was the result of "voluntary intoxication on benzodiazepines with or without additional alcohol."

¶ 44      Defendant's claims regarding the testimony about the victim's injuries, search and seizure, and trial counsel's failure to file a motion to suppress are all procedurally barred. The claims defendant raises regarding the victim's injuries were addressed by this court on direct appeal and could have been raised at trial or anytime thereafter. The claims defendant raises about trial counsel's failure to challenge the wrongful search and seizure or to suppress statements made by defendant all could have been raised in his initial postconviction petition

and, thus, are forfeited. Defendant's claim regarding his allegedly void convictions because they were based on the same aggravating element was raised on direct appeal and could have been raised in his original postconviction petition.

¶ 45 To the extent that defendant claimed he demonstrated cause based on postconviction counsel's failure to read the record and discover a claim, we again note the Postconviction Act does not provide a forum to challenge an earlier postconviction proceeding. *Flores*, 153 Ill. 2d at 277. "Thus, where a petitioner files a second or subsequent post-conviction petition wherein he claims ineffective assistance in his first post-conviction proceeding, consideration of those claims is beyond the scope of the Act." *Id.*

¶ 46 The claims raised in defendant's successive postconviction petition were either barred by *res judicata* or forfeited. Additionally, defendant failed to show cause as to why he failed to raise certain claims earlier. Accordingly, the trial court properly denied defendant's motion for leave to file a successive postconviction petition. Because defendant failed to raise a meritorious issue for leave to file a successive postconviction petition, we grant OSAD's motion to withdraw as counsel on appeal, and we affirm the judgment of the trial court.

¶ 47                                  III. CONCLUSION

¶ 48 For the reasons stated, we affirm the trial court's judgment.

¶ 49 Affirmed.